Whitaker, Judge,
delivered the opinion of the court:
This case is similar to the case of Joseph J. Kelly v. United States, No. 626-53, this day decided, ante p. 571, but wholly different in this essential respect: In the Kelly case there was an evident attempt by Kelly’s superiors, through devious means, to deprive him of the rights to which he was entitled under the Veterans’ Preference Act, which was successful; whereas in the case at bar Bortin has been deprived of no right. Kelly asked for something to which he was entitled; Bortin asked for something to which he was not entitled.
Plaintiff sues for $1,732.31, the difference in salary received by him since May 31,1952, as an adjudicator in the Veterans’ Administration, and the salary to which he alleges he is entitled as an assistant adjudication officer.
Plaintiff’s claim has been prosecuted through all levels in the Veterans’ Administration and the Civil Service Commission, and, after careful consideration by these agencies, his complaint has been held to be without merit and he has been notified in writing of the reasons for their adverse decisions. A full trial of the facts has been held before a Commissioner of this court, who has made an extended report of the facts.
We see no merit in plaintiff’s claim, and agree with the reasons assigned by the Civil Service Commission for disallowing it. It requires little further discussion.
The facts have been stated in detail in the Commissioner’s report, which we have substantially adopted as the court’s findings of fact. A condensed statement of the facts will suffice for this opinion.
On March 15, 1948 plaintiff and two others were detailed as assistant adjudication officers of the regional office of the Veterans’ -Administration in Milwaukee, Wisconsin. On June 12, 1949, the number of assistant adjudication officers *858 was reduced from three to two. At the request of his superior, but of his own free will, plaintiff agreed to relinquish his office as assistant adjudication officer and to accept a position of equal grade as rating specialist, thus reducing the number of assistant adjudication officers from three to two.
On April 28,1952 plaintiff was notified that the number of rating specialists was to be reduced and that he would be separated from the service unless he was willing to accept the position of adjudicator, which was lower in grade and pay, but which was the only position open for which plaintiff was deemed qualified. Plaintiff accepted this lower position under protest, and appealed to the seventh regional office of the Civil Service Commission. He complained, chiefly, that, instead of his being reduced in rank, he should have been given one of the positions of assistant adjudication officer (which was of the same grade), and one of the men holding these positions should have been separated; in other words, to use Civil Service parlance, he should have been permitted to “bump” one of these two men.
After a hearing, the director of the regional office wrote plaintiff that none of the grounds of his appeal had merit. With respect to his principal ground, stated above, he said that the positions of rating specialist and assistant adjudication officer were not on the same competitive level, and that, therefore, he had no right to “bump” one of these men. The gist of the director’s ruling, which was lengthy, is contained in the following:
* * * While it is true that both may have the same examination and experience requirements, and while it may also be true that incumbents of one position were occasionally detailed and reassigned to the other position and vice versa, nevertheless, the actual duties performed in each position are not alike. It is understandable that many of the incumbents of each position thoroughly understand the duties and techniques of the other, but the individual duties and responsibilities of each position are not sufficiently alike to consider them interchangeable for reduction in force purposes.
* # * $ *
Plaintiff appealed to the Board of Appeals and Eeview. This board affirmed the action of the regional office. In his letter to plaintiff the Chairman of the Board said, in part:
*859 Comparison of the actual duties and responsibilities performed by a Rating Specialist (Legal), GS-12 and an Assistant Adjudication Officer, GS-12, discloses that they are not sufficiently similar to warrant placing them in one competitive level for reduction in force purposes. Consequently, the fact the agency placed them in separate competitive levels did not constitute any violation of your rights under the Retention Preference Regulations.
He also discussed plaintiff’s other contentions and found them to be without merit.
Later, one of the assistant adjudication officers was promoted to adjudication officer, and a man by the name of Ballman, who held a position as an adjudicator, grade GS-9, which position plaintiff also held, was promoted to assistant adjudication officer. Plaintiff, claiming he should have been promoted to this position, instead of Ballman, appealed to the regional office of the Civil Service Commission. His appeal was denied. In his letter to plaintiff the regional director said, in part:
Promotion is the prerogative of an agency so long as the employee promoted meets the requirements for the position to wliich promoted. Therefore, with respect to the promotion of Mr. Ballman, no Civil Service regulations appear to have been violated.
The Board of Appeals and Review of the Civil Service Commission affirmed on appeal.
We think the administrative agencies ruled correctly on plaintiff’s contentions, and assigned the correct reasons for their rulings. When it became necessary to reduce the number of rating specialists, and, in consequence, to separate plaintiff from the service, or to give him a subordinate position, plaintiff was not entitled to displace one of the assistant adjudication officers, because rating specialists and assistant adjudication officers were not on the same competitive level, although of the same rank and drawing the same salary. This is so, because their duties and responsibilities were not the same. A rating specialist sat on a rating board composed of three men, which decided the rating to which veterans seeking compensation were entitled. An assistant adjudication officer had supervision over a substantial number of employees, including the members of the rating boards. *860 Different talents were required for the two jobs. One might be a good rating specialist, and a poor assistant adjudication officer, or vice versa. The Veterans’ Administration was, therefore, justified in putting them in different competitive classifications, and plaintiff, a displaced rating specialist, was not entitled to displace an assistant adjudication officer with less retention points than he.
Nor did plaintiff have any right to complain because, later on, an adjudicator other than he was promoted to assistant adjudication officer. It is still true, fortunately, that “promotion is the prerogative of an agency so long as the employee promoted meets the requirements for the position to which promoted.” It would be quite detrimental to the public service if an agency head had no discretion in selecting men to do important jobs. He is already circumscribed more than a little in his control over his subordinates. Further restraint upon him would be unwise.
We have considered plaintiff’s other contentions, but we are of opinion that none of his rights have been violated. His petition is dismissed.
LaRAmoee, Judge; MaddeN, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a citizen of the United States, has been an employee of the United States Veterans’ Administration in its regional office at Milwaukee, Wisconsin, since October 11, 1945. He is a preference eligible as defined in the Veterans’ Preference Act of 1944 and at all times pertinent has been in the classified civil service of defendant. He has been a member of the bar since 1927. For three and one-half years prior to his employment with the Veterans’ Administration in Milwaukee he was employed by the Civil Service Commission, being its representative for the New Jersey area for one year. He was conversant with the provisions of the Veterans’ Preference Act and the Civil Service *861 Commission’s personnel regulations. Sometimes during bis employment at tbe Milwaukee regional office be acted as an unofficial advisor to employees on personnel matters.
2. Plaintiff’s efficiency ratings at all times involved in tbis action were “good” or better.
3. The chain of events giving rise to plaintiff’s claim appears to have had its beginning in March 1948 when the adjudication division of the Milwaukee regional office of the Veterans’ Administration was reorganized. The division had not been in “good shape” with reference to its workload and other matters. Mr. John A. Dunlap, who had been an employee of the Veterans’ Administration since 1945, and in 1948 was its loan guarantee attorney at Milwaukee, was detailed as acting adjudication officer on March 15, 1948. It was Mr. Dunlap’s desire to have his own “team” of assistant adjudication officers, three in number. He recommended and secured approval for three men to be temporarily detailed to these positions on March 15,1948.
Mr. John J. Croke, who had been performing duties as an assistant adjudication officer since 1946, was retained in his position. He had been a Veterans’ Administration employee since 1944. Mr. Joseph E. Mullen, who had been a war-service indefinite rating specialist (legal) since early in 1946, and plaintiff, a Veterans’ Administration employee since 1945 and employed as an authorization officer in 1948, were the other two men detailed to do work as assistant-adjudication officers. The three men all understood their selection was temporary and were willing to serve on that basis.
4. Plaintiff’s official position in March 1948 was that of authorization officer, grade P-4. Effective June 13, 1948, plaintiff was promoted to rating specialist (legal), grade P-5. However, at that time he was serving as a temporary assistant adjudication officer, as stated in the previous finding, and continued to serve in that capacity. The latter position then carried the grade of P-4, but on or about August 2,1948, it was reclassified as grade P-5, the same grade and salary as that of rating specialist.
As the result of an examination, plaintiff, on August 22, 1948, was converted from his status of a war-service indefi *862 nite appointee as rating specialist (legal) to probational status as assistant adjudication officer, subject to investigation. The investigation was made and the condition removed. The notification of personnel action credited plaintiff’s war-service indefinite appointment as rating specialist (legal) from June 13, 1948, on his probationary period of one year which was therefore to expire on June 12, 1949.
5. Mr. Croke, together with plaintiff and eight others, including a Mr. C. F. Baley, qualified as eligibles for assistant adjudication officers as a result of the examination, but Mr. Mullen did not. Notwithstanding this, Mullen’s detail in a temporary assignment as assistant adjudication officer continued. Mr. Mullen did qualify for competitive status as a rating specialist (legal) as a result of the examination and was converted to permanent status therein on September 5, 1948. On this same date, Baley was promoted to the position of assistant adjudication officer. However, as Baley was agreeable to serving as a rating specialist (legal), he was detailed for six months to that position, with approval of the Civil Service Commission, and this made it possible to continue Mullen’s services as assistant adjudication officer for 90 days to December 5, 1948. When Mullen’s detail expired on the latter date, he was returned to the official rolls as rating specialist (legal) but apparently actually continued to perform the work of an assistant adjudication officer along with plaintiff and Mr. Croke, Baley still being agreeable thereto. Mr. Baley was given efficiency ratings as an assistant adjudication officer, although from the evidence it appears he never actually did the work of that position.
6. On December 15, 1948, the Milwaukee office tried to get an interim position as assistant adjudication officer established for 90 days and to detail Mr. Mullen to this position, but the Civil Service Commission disapproved the request as Mullen had held competitive status less than six months and had not qualified administratively. However, because another calendar year soon arrived, it was possible to give Mullen another 90-day detail for 1949 which did not require further Commission approval. To this arrangement the plaintiff and Baley voiced no disapproval. On June 12, 1949, Mullen was given permanent status as assistant adjudi *863 cation officer by reassignment from Ms official position of rating specialist (legal) through action of the personnel officer at the regional office in Milwaukee.
7. A “detail” as defined by the Veterans’ Administration in 1949 in the Milwaukee region was as follows:
n — DEFINITION of detail — A detail is defined as a temporary assignment of an employee from one position to another position without changing his regular position or pay status. Such detail includes assignment to the tasks of another position, either within the same organizational segment, or in another organizational segment.
m — Rolicy—1. Employee details are authorized to meet emergency and extraordinary situations. Such a detail may be to a position in the same, higher or lower grade as the position occupied by the employee. Whenever it appears that the need for filling a position will be of a permanent nature, a request for filling the appropriate position — either through reassignment, promotion or new appointment— shall be made in accordance with prescribed policy, personnel ceiling permitting.
2. Employee details are governed by the needs of the service and the consent of the employee is not required in connection with such assignments.
3. It is the policy of this office to comply with existing statutory requirements and Civil Service regulations governing details. In no case will detailing be used as a device for avoiding displacement orders issued by the Civil Service Commission, or giving a person a probational appointment from an inappropriate Civil Service register.
8. Civil Service regulations place the following restrictions on the detailing of employees with probational or competitive status.
IV-CIVIL SERVICE REGULATIONS — •* * *
1. An employee may be detailed to a position in a different line of work or to a higher grade position for a period of 90 calendar days or less without reference to qualifications standards.
2. Details of employees who have served six months or more after probational appointment or conversion to competitive status for periods in excess of 90 calendar days require reference to qualifications standards; and in those cases where the qualifications are not met, prior approval of the Civil Service Commission is required.
3. Details of employees who have not served at least *864 six months after probational appointment or conversion to competitive status for periods in excess of 90 calendar days may be made only with the prior approval of the Civil Service Commission.
v — INFORMAL dbtails — Details of employees for brief periods (60 calendar days or less) in order to meet peak workloads or unusual situations, may be made by division chiefs, managers-in-charge or officers-in-charge, without prior approval. * * *
VI-FORMAL DETAILS-* * *
3. The Personnel Division will determine whether or not the detail is compatible with Civil Service regulations.
9. On April 20, 1949, a revision was made in the table of organization of the Milwaukee office providing for the reduction in the number of assistant adjudication officers from three to two. The possibility that this might eventually happen had been discussed by Mr. Dunlap with his assistants on previous occasions. All three of the assistants had indicated they would be willing to take positions as rating specialists if this should become necessary. They all knew what these positions were and how they fit into the structure of the adjudication office. Mr. Dunlap indicated he desired to recommend Mullen as his eventual successor.
10. Mr. Baley was not given any notice of an impending reduction in force among assistant adjudication officers, effective June 12, 1949, but Dunlap asked him if he would be agreeable to a reassignment from such position which he held on paper but the duties of which he had never actually performed, as before noted, to the position of rating specialist which position he was in fact filling. This was agreeable to Baley who signed a request for reassignment prepared by Mr. Dunlap.
11. Mr. Croke, an attorney, had the longest experience of the three assistants. He had performed the work of an assistant adjudication officer since 1946. He had also qualified under the unassembled examination for the position, as did plaintiff and Baley. Mr. Mullen, as noted, failed. After Mr. Croke’s probational status was completed and while employed as a rating specialist (legal), P-5, he had been permanently reassigned as assistant adjudication officer, effective *865 August 22,1948. However, on May 9,1949, he was given a reduction in force notice effective June 11, 1949.
12. Plaintiff had more retention points in May and June 1949 than either Mr. Croke or Mr. Mullen, but, apparently, not more than Mr. Baley. However, Baley had eliminated himself from consideration by agreement to reassignment as rating specialist. Had plaintiff then insisted on his retention rights he would have displaced Mr. Croke, as well as Mr. Mullen, unless it be said that since Mullen was serving temporarily and unofficially as assistant adjudication officer, he was not in actual competition with plaintiff. However, plaintiff’s probationary period was ending on the day Mullen was qualifying for the position of assistant adjudication officer, so it is found all three would have been in competition, as of June 12,1949, although not before.
13. Plaintiff did not insist on his retention rights. Under date of June 2, .1949, plaintiff and Mr. Dunlap, adjudication officer, exchanged memoranda in which plaintiff stated, “I respectfully request that at your convenience 1 be reassigned to the position of Eating Specialist (Legal).” Mr. Dunlap’s memorandum stated, “I regret the circumstances which have caused your voluntary reassignment to the position of rating specialist, legal; * * and commended plaintiff for his work as an assistant adjudication officer. Plaintiff dictated this memorandum in his own office to his' secretary. Mr. Dunlap asked the personnel office to make the reassignment effective June 11,1949. It was made effective June 12. This was a lateral reassignment in grade not involving loss of civil-service status or pay, although actually a reduction in rank. The journal action was prepared in accordance with existing regulations which made no reference to anything indicating demotion in such a situation.
14. Mr. Croke’s notice of separation as assistant adjudication officer was rescinded, and on June 12,1949, he and Mullen took the two permanent posts as Dunlap’s assistants after the reduction in force.
15. Plaintiff now contends that the action of Mr. Dunlap, his superior, was taken in order to defeat and avoid the procedural requirements of the sequence of selection in a reduction in force and that he was unwilling to make the *866 change. Plaintiff, however, filed no appeal under the civil-service regulations which provided:
Sec. 20.13. Appeals, (a) Any employee notified of proposed action by reduction in force who believes that the regulations in this part have not been correctly ap-glied may appeal to the appropriate office of the Civil ervice Commission, stating reasons for believing the proposed action to be improper, within ten days from the date he received notice of the proposed action, or within ten days after a decision by the agency on his answer to any notice giving him an opportunity to answer.
16. There is no evidence which establishes that plaintiff’s action in requesting reassignment was under duress. The instigation of the request came from Dunlap, but plaintiff was anxious to be cooperative. The relationship between Dunlap and his assistants had always been friendly. Plaintiff expressed no dissatisfaction or disagreement with his reassignment or with the contents of the memoranda exchanged between him and Dunlap, either to Dunlap, the personnel office or the manager of the Veterans’ Administration office in Milwaukee prior to another reduction in force in April 1952, referred to hereafter. Plaintiff was familiar with the civil service retention regulations, the personnel manual and the Veterans’ Preference Act. ITe knew from long association with the adjudication office that his reassignment as a rating specialist (legal) would mean that he would no longer have a private office, private telephone and secretary, with supervision of about 85 employees, including several rating boards and the work of the authorizers. He knew that rating specialists would be subject to efficiency ratings by the assistant adjudication officers who were his former associates, and he would have no employees under his supervision except the one typist assigned to his three-member board. The reassignment was not an adverse action within the meaning of the Veterans’ Preference Act.
17. In April 1950 the number of assistant adjudication officers was further reduced from two to one. Mr. Croke, then serving on a permanent basis was reassigned on April 30 to the position of rating specialist (legal) which was at the same grade and with the same pay. On February 18, *867 1951, Ms reassignment was made permanent to the position of rating specialist (occupational). This reassignment, like the other, was to a position with the same grade and pay as assistant adjudication officer. On September 7, 1951, Mr. Croke was notified of his separation due to reduced personnel ceilings, effective October 10, 1951. An additional position of assistant adjudication officer was allowed, however, and he was, on October 11,1951, reassigned from rating specialist (occupational) to assistant adjudication officer. Plaintiff did not at the time ask for any explanation and none was given as to why he did not get this reassignment.
18. Plaintiff now contends that his rights were affected by actions of the Milwaukee office taken with respect to Mr. Eldon M. Stenjem, the manager of the subregional office, at Madison, Wisconsin. Mr. Stenjem had been rating specialist (occupational) in the Milwaukee office prior to entering military service in World War II. He was on military furlough for six years during the war. Upon his return he was made manager of the suboffice. It became necessary to discontinue the suboffice and Stenjem was notified on June 27, 1951, that he would, be separated July 31, 1951. This date was later revised to August 15, 1951. Effective August 16, Mr. Stenjem was reassigned to the position of rating specialist (occupational). His retention points exceeded plaintiff’s. His points also exceeded Mr. Croke’s. Plaintiff says that Stenjem should have “bumped” Croke in August 1951. Both, however, were retained on the payroll until Mr. Croke was reassigned as assistant adjudication officer in October. There is no evidence that Stenjem had or claimed any rights to a position as assistant adjudication officer in which he had never served or that there was any necessity for someone to be bumped to make a place for Stenjem as rating specialist. While Croke and Stenjem were rating specialists in 1951 so was plaintiff. It is found that defendant’s actions respecting the reassignment of Stenjem were not prejudicial to plaintiff.
19. On April 28,1952, while employed as a rating specialist (legal), GS-12, formerly P-5, plaintiff was notified by the personnel officer of the Veterans’ Administration regional office that because of a reduction in force he would be sepa *868 rated from his position at the close of business on May 31, 1952. The notice of separation was accompanied by an offer of reassignment to a position as adjudicator, grade GrS-9. Plaintiff accepted the reassignment stating:
The acceptance of the above, in no way constitutes a waiver of my rights to retreat or reassignment to positions of a higher grade in the area for which I have filed an appeal to the Civil Service Commission.
Effective June 1,1952, plaintiff was changed in his job, as indicated above, to the lower grade of adjudicator. This meant a reduction in salary from $7,740 to $5,810 per annum.
20. Prior to the receipt of his written notice of separation, plaintiff, on April 9, 1952, had discussed with the personnel officer of the Milwaukee office his retention standing and the possibility of being reassigned to the position of assistant adjudication officer. On April 14, 1952, he submitted a list of questions to the personnel officer and asked that they be transmitted to the Veterans’ Administration central office and that he receive answers thereto. At another conference on April 15, the personnel officer gave plaintiff specific answers to each of his questions and stated that as he had answered the questions at his own level there was no need to present them to the central office. Plaintiff was advised that he was not entitled to be assigned to the position of assistant adjudication officer.
21. At the time plaintiff got his notice of separation he was in retention subgroup PA-1. The retention register of the regional office, adjudication division, as computed May 1, 1952, showing the retention groups and credits, was in part as follows:

Assistant Adjudication Officer — Q-S—12:
Oroke, John J_PA-1 9+ 1-10-46
Mullen, Joseph E-PA-1 10 7-7-46
Bating Specialist {Claims) — &S-1B:
Bortin, Earl_PA-1 10+ 7-22-42
Baley, Clyde_PA-1 12 3-27-46
Senti, John_PA-1 12+ 7-24-45
Shannon, Thomas E_PA-1 16
Heekenkamp, Emil_PA-1 29
Marshall, Guy E-PA-1 29
Itoekow, Arthur-PA-1 35
Authorizer — G-S-ll:
Ballman, Richard J_PA-1 10+ 12-17-45
Billiek, William-PA-1 11 12-3-45
*869 Adjudicator — G-S-9 (Partial Register):
Shemiek, Frank_TA-1 10 5-24^-48
WMte, Harold J_PA-1 9 4-10-44
Hutchison, Harry_PA-1 9+ 3-25-46
O’Connor, John_PA-1 10 3-8-46
Hughes, Thomas_PA-1 10 2-11-46
Eckl, Frederick_PA-1 10 1-2-46
Lynch, Thomas_PA-1 10 12-17-45
Kwass, David_PA-1 10+
22. The Civil Service Commission’s retention order which governed the reduction in force provides in part as follows:
ESTABLISHMENT OF COMFETITIVE LEVELS
After the competitive area for a reduction has been selected, it is necessary to group the jobs in the area by competitive levels and to decide which level or levels to reduce.

Extent of Competitive Level

A competitive level includes all positions in a competitive area in the same grade, line of work, trade, or profession (whether or not they have different titles or different pay rates) which are enough alike that interchange of personnel is feasible. * * *

Determining Competitive Levels

‡ ‡ ‡ ‡
Examination from which appointed. — Although examinations are usually adapted to specific types of positions, the fact that two positions are filled from competitors in the same examination does not necessarily mean that the positions are in the same competitive level in a reduction in force.
Determining feasibility of interchange of employees. — Several competitive levels may exist within the same service and grade and within the same trade or occupation at the same salary rate. It is proper to establish separate levels within such groups when differences exist which are significant in recruitment, training, or assignment; * * *
Positions are not in the same competitive level unless interchange of personnel is feasible in both directions. For example, the position of clerk-stenographer, GS-2, and clerk-typist, GS-2, are not in the same competitive level because they are not interchangeable, even though a particular clerk-typist may be qualified for a clerk-stenographer job.
*870 Determinations as to whether two or more positions are interchangeable are made easier by ascertaining from the official duties of the positions what laws, orders, rules, regulations, policies, or procedures must be applied in the performance of the duties of the positions. Only when it is found that substantially the same knowledge, technique, and know-how are required to get the respective jobs done satisfactorily are the positions considered to be in the same competitive level.
23. The positions of assistant adjudication officer were not in the same competitive level as were the positions of rating specialists assigned to the medical rating boards. The respective positions are not interchangeable in both directions and do not require substantially the same knowledge, technique and know-how to get the respective jobs done satisfactorily. The duties and responsibilities of an assistant adjudication officer are set out in detail in the Veterans’ Administration standard position description which is in evidence as defendant’s exhibit 4. Such duties and responsibilities are, in part, as follows:
Under general direction to serve as an assistant adjudication officer, regional office, and in that capacity:
Acts as adjudication officer during the nonavailability of that official, when so assigned.
Directs and supervises the activities of a section of the adjudication division consisting of four rating boards and supporting authorization personnel.
He is responsible for insuring a proper understanding of the laws, regulations, directives, precedents, and procedural instructions, by his subordinates and their uniform application. He instructs, consults with and advises authorization officers and adjudicators as to matters within their province and makes decisions in the more difficult and complex cases. He instructs, consults with and advises the chairman and members ox the rating boards regarding rating practice, procedure, and the application of the Disability Rating Schedules. He determines whether administrative appeals will be taken and makes recommendations to the adjudication officer relative to the advisability of seeking advisory opinions and precedents from the branch offices.
He is responsible for the efficient organization and operation of his section, for coordinating the rating and authorization functions within each unit and between the several units of his section, for the production of his *871 section from the standpoint of both quantity and quality, for assigning personnel and devising procedures to meet changing conditions and for the maintenance of adequate production records. He recommends qualified personnel for promotion and nominates the chairman of the rating boards from the membership of these boards. He is responsible for the adequate training of his personnel.
He directs the development and adjudication of claims for disability compensation and pension, the procurement of the requisite evidence for adjudicating claims for disability compensation and pension and for the adjustment of emergency officers retirement pay or retirement pay by reason of apportionment, or hospital treatment.
24. The medical rating boards were directed and supervised by the assistant adjudication officers. The boards consisted of three rating specialists, namely, a rating specialist (legal), a rating specialist (medical) and a rating specialist (occupational). The official duties of these rating specialists were also set forth in the standard position descriptions of the Veterans’ Administration, all of which are in evidence as defendant’s exhibits 5,6 and 7.
The duties performed in the Milwaukee regional office by the occupants of the positions described conformed to the standard job descriptions.
The purpose of the position of rating specialist was to determine the relationship of disability to the military service and to evaluate the disability resulting from disease or injury in collaboration with the other two rating specialists, as a basis for entitlement to pension or other benefits. It was not essential that the assistant adjudication officer be experienced as a rating specialist prior to performing such duties. Plaintiff had no experience as a rating specialist prior to his serving as an assistant adjudication officer. A qualified assistant adjudication officer would have to become familiar with the duties of the rating specialists and the authorization officers in the adjudication division, as he would be called upon to supervise their work. By reason of this experience he might also qualify as a rating specialist. However, the knowledge gained as a rating specialist did not of itself qualify an employee to be an assistant adjudication officer. It definitely *872 was not feasible to make a general interchange of rating specialists and assistant adjudication officers, although some rating specialists, including plaintiff, were qualified to perform the duties of an assistant adjudication officer. There was no free interchange between the two positions and the recognition of this in the establishment of different competitive levels between, the two positions was not unreasonable.
The position of assistant adjudication officer was higher in rank than the position of rating specialist on a medical rating board or the position of authorization officer, and was so regarded in the Milwaukee regional office.
25. Under date of April 25, 1952, before his official notice of separation, plaintiff wrote a long and detailed complaint to the Civil Service Commission’s seventh regional office at Chicago about his impending reduction. After receipt of his official notice he supplemented his complaint with an appeal dated May 1, 1952, and a letter dated May 8, 1952, accompanied by a brief dated May 6,1952. The gist of the appeal was that plaintiff was entitled to the position of assistant adjudication officer held by Mr. John J. Croke because Mr. Croke had been improperly promoted in October 1951; that plaintiff had more retention points than Mr. Croke; that the plaintiff’s position as a rating specialist (legal) was interchangeable with Mr. Croke’s position of assistant adjudication officer; and that plaintiff was entitled to a position as legal guardianship attorney and to compete with attorney advisors, all in GS-11 grades. Plaintiff did not furnish the Milwaukee regional office with copies of his appeals but the substance thereof was communicated to that office by the Commission’s representatives. Under date of May 14,1952, the Seventh United States Civil Service Region scheduled a hearing on plaintiff’s appeal, which hearing was held at Milwaukee, Wisconsin, May 22, 1952, before the Commission’s appeals examiner. Plaintiff’s appeal was fully heard and plaintiff praised the efficiency and courteousness of the Commission’s examiner.
26. Subsequent to the hearing, plaintiff wrote to the regional director on May 29,1952, amending his appeal so that on June 3, 1952, the regional director requested additional *873 information from the Milwaukee office, which, was furnished on June 5, 1952.
Under date of June 20, 1952, the regional director of the seventh region sustained the action of the Milwaukee office and wrote plaintiff as follows:
This refers to your appeal, under the Eetention Preference Eegulations, against the action of the Milwaukee Eegional Office, Veterans’ Administration, in reaching you for reduction in force action in your position of Eating Specialist, Legal, GS-12. You based your appeal on four points, (1) excessive narrowness of competitive level; (2) denial of your retreat rights; (3) failure to make a reasonable offer of reassignment; and (4) denial of reappointment priority rights or violation of the rules of selection. You were offered reassignment to the position of Adjudicator, GS-9, which you alleged was unreasonable.
A hearing was held in the Eegional Office of the Veterans’ Administration at Milwaukee, May 22,1952. All controversial matters were discussed thoroughly at the hearing, and official records were examined.
With respect to point one, the interchangeability of the positions of Eating Specialist, Legal, and Assistant Adjudication Officer, a review of the official position descriptions for the two positions does not reveal that the duties and responsibilities of each are sufficiently alike to warrant a finding that they are interchangeable within the meaning of the Eetention Preference Eegula-tions. While it is true that both may have the same examination and experience requirements, and while it may also be true that incumbents of one position were occasionally detailed and reassigned to the other position and vice versa, nevertheless, the actual duties performed in each position are not alike. It is understandable that many of the incumbents of each position thoroughly understand the duties and techniques of the other, but the individual duties and responsibilities of each position are not sufficiently alike to consider them interchangeable for reduction in force purposes.
Eegarding point 2, it is your contention that you have a retreat right to the position of Assistant Adjudication Officer from Eating Specialist, Legal, since the latter had always been at the P-5 level, or its equivalent, while the former was changed from GS-11 (P-4) to GS-12 (P-5) some time in 1948. You contend that your re *874 assignment from the former to tbe latter on June 12, 1949, was a promotion. However, it is noted that this reassignment was from one P-5 position to another P-5 position, which indicated that the position of Assistant Adjudication Officer had been reclassified to P-5 before your reassignment, therefore, not a promotion. Since it was not a promotion, no retreat rights exist.
Skipping point three for the present, you have contended in point four that your agency has violated the rules of selection in past reduction in force actions. Specifically, you contend that a Mr. John J. Croke, low in retention points, has been reassigned during several previous reduction in force programs to the detriment of other higher point employees who were not similarly reassigned. It was brought out at the hearing that in November, 1951, Mr. Croke, then a Rating Specialist, Legal, was at the bottom of the Retention Register and had received a reduction in force notice. The thirty-day notice had already expired, and Mr. Croke had not been offered reassignment, nor had his reduction in force notice been rescinded. However, on the thirty first day of the notice period; he was reassigned to a position of Assistant Adjudication Officer, which was an additional position just then authorized by the Central Office of the Veterans’ Administration. The Retention Preference Regulations provide that reassignments may be made before, during and after a reduction in force program, as long as no higher retention preference employee is displaced thereby.
It was also contended by you that Mr. Croke’s reassignment from Rating Specialist to Assistant Adjudication Officer, was considered a promotion in rank by the agency, and this was acknowledged by the Personnel Director at the hearing. Such being the case, you contended that Mr. Croke should therefore be placed in retention subgroup TA-1 instead of PA-1 and you, being a PA-1, could therefore “bump” him. According to the current Retention Preference Regulations, which were adjusted to conform with the provisions of the Whitten Amendment, promotions in grade, but not in rank, were to be considered as of “indefinite” tenure. Therefore, since Mr. Croke was not promoted in grade, he was properly retained in subgroup PA-1. Subsequently, you addressed a letter, under date of May 29, 1952, to this office regarding Mr. Croke, in which you stated he was reassigned to a position vacated by Dr. Ronnenberger, and that you also believed that he had a break in service. This was called to the attention of the *875 Veterans’ Administration. We are now informed that Mr. Croke was not reassigned to the position vacated by Dr. Ronnenberger, that he had no break in service, and that he is in retention subgroup PA-1.
Now referring to your point three, the offer of reassignment to Adjudicator, GS-9, while it involves a reduction of three grades, appears to be reasonable, since, according to the agency, no other positions exist at higher levels occupied by employees in lower than retention subgroup PA-1.
It is realized that other controversial matters were also raised by you at the hearing, particularly the interchangeability of Attorney positions with other positions, and the right to “bump” into Attorney positions'. However, Attorney positions are known as Schedule A, or Excepted positions, separate and apart from positions in the Competitive Service. The Retention Preference Regulations provide specifically for separate competitive levels for Excepted positions, and provide also that employees occupying positions in the Competitive Service may “bump” only those employees who not only have competitive status, but who are also occupying positions in the competitive service. Although some employees occupying Attorney positions have competitive status, they are not occupying positions in the competitive service. Although such “cross-bumping” might be effected administratively, the regulations do not require it, and therefore, the Commission is without authority to sustain such a contention.
In cas'e of dissatisfaction with the foregoing interpretations and decisions, it is your privilege to appeal to the Board of Appeals and Review, United States Civil Service Commission, Washington 25, D. C., within seven (7) days of the receipt of this letter.
27. Under date of June 25, 1952, plaintiff wrote the regional director stating he was appealing the decision to the Board of Appeals and Review, U. S. Civil Service Commission. On the same date he transmitted a lengthy appeal to the board. Under date of July 21,1952, plaintiff forwarded a supplemental appeal and brief. On October 8,1952, plaintiff sent a list of hypothetical questions to the director of the •seventh region. The director replied on November 4, 1952. On November 14, 1952, the Board of Appeals and Review affirmed the decision of the seventh region. The chairman of the board wrote plaintiff in part as follows:
*876 The Commission’s Board of Appeals and Review has carefully considered all the facts and circumstances relating to your case. It has been learned you were correctly listed on the retention register and properly reached for reduction in force action since no employee in your competitive area and level with less retention rights was retained in preference to you. In lieu of separation from the service you were offered reassignment to the position of Adjudicator, GS-9. However, you considered this offer unreasonable.
Comparison of the actual duties and responsibilities performed by a Eating Specialist (Legal), GS-12 and an Assistant Adjudication Officer, GS-12, discloses that they are not sufficiently similar to warrant placing them in one competitive level for reduction in force purposes. Consequently, the fact the agency placed them in separate competitive levels did not constitute any violation of your rights under the Retention Preference Regulations.
The official notification of Personnel Action, dated June 12, 1949, shows you were reassigned at the same grade and salary from the position of Assistant Adjudication Officer, P-5 to Rating Specialist (Legal), P-5, same date. Since you were reassigned from one P-5 position to another P-5 position, no promotion was involved and no retreat rights would exist. Consequently, the agency was not required under the regulations to offer you reassignment to the position of Assistant Adjudication Officer, GS-12.
Inasmuch as no positions at a higher grade than GS-9 were found which were occupied by employees in retention subgroups lower than PA-1, the offer of reassignment to a GS-9 position in lieu of separation from the service must be considered a reasonable one under the regulations.
As a result of this study of your case by the Board of Appeals and Review, including a review of all the facts brought out at the hearing held by the Seventh Region on May 22,1952, in connection with your appeal to that office, no violation can be found of your rights by the employing agency under the Commission’s Retention Preference Regulations in effecting your reduction in force. Accordingly, the Board affirms the previous decision of the Seventh Region for the reasons carefully explained to you in letter of June 20, 1952.
28. Plaintiff contends that he, rather than Richard J. Ball-man, should have been appointed to the position of assistant adjudication officer vacated by Mullen’s appointment as ad *877 judication officer on October 1, 1952. Plaintiff applied for the position October 3,1952, and was advised that his application would be considered but that there would be a delay in filling the vacancy because of the limitation of funds available for salary purposes. The personnel officer did not consider plaintiff to be entitled, by reason of reappointment rights, to the position, and the Civil Service Commission had so ruled. Eetention points were not a factor in the promotion. Plaintiff was, however, considered for the vacancy along with other employees. Effective November 23, 1952, Mr. Ballman, who was considered the best qualified applicant by Mr. Mullen, was given an indefinite promotion from the position of adjudicator, GS-9, to this GS-12 position, which was made permanent December 5, 1952. Mr. Ballman had been employed since December 17,1945. Pie was an authorizing officer, GS-11, when separated, effective May 31, 1952, due to a reduction in force at which time he was offered and accepted the position of adjudicator, GS-9. The evidence fails to establish that Ballman had not served in grade GS-11 for a period of one year- prior to his promotion to grade GS-12.
29. On November 21,1952, plaintiff again wrote the Board of Appeals and Review, U. S. Civil Service Commission, and requested rulings on various questions which he proposed. Under date of November 24, 1952, the plaintiff submitted another appeal to the director of the seventh region because of the decision of the Milwaukee regional office to promote Mr. Ballman rather than plaintiff to the position of assistant adjudication officer. Under date of November 26,1952, plaintiff also appealed the same decision to the Board of Appeals and Review. Plaintiff, under date of December 1,1952, wrote the regional director and further implemented his appeal.
30. On December 3, 1952, the regional director wrote plaintiff as follows:
We have your letters of November 24, 1952 and December 1, 1952, in which you appeal the action of the Veterans Administration Regional Office, Milwaukee, Wisconsin, in promoting Mr. R. J. Ballman, an Adjudicator, GS-9, to the position of Assistant Adjudication Officer, GS-12 to fill a vacancy. You state that you had previously held this position of Adjudication Officer, *878 GS-12, and that you were subsequently a Rating Specialist, Legal, GS-12, from which you were separated by reduction in force May 31,1952.
It is your contention that upon your request for reinstatement to this position, now vacant, you should have been reinstated thereto. Although not mentioned in either of your two letters, it is believed that you are now occupying a position at the grade 9 level.
Promotion is the prerogative of an agency so long as the employee promoted meets the requirements for the position to which promoted. Therefore, with respect to the promotion of Mr. Ballman, no Civil Service regulations appear to have been violated.
You contend that in our decision of June 20,1952, we stated “the retention preference regulations provide that reassignments may be made before, during, and after a reduction in force program, as long as no higher retention preference employee is displaced thereby.”
The promotion of Mr. Ballman has not displaced you from your current position. As far as any other reassignment rights are concerned, or reemployment rights, those rights apply only when an employee has been replaced on a reappointment reserve list following separation by reduction in force. Therefore, when an employee has accepted a demotion in lieu of separation 'by reduction in force, his name is not placed on the reappointment reserve list. On the other hand, had you actually been separated and your name placed on the reappointment reserve list, the agency would still not have been estopped from promoting Mr. Ballman or any other employee to any position for which a vacancy occurred subsequent to a reduction in force action. The agency could have promoted Mr. Ballman or some other employee, could have reassigned laterally some other employee, could have made a new appointment of a 10-point preference eligible or could have effected the reemployment off any qualified 5-point veteran preference eligible who had permanent status.
It is realized, of course, that all of the foregoing action has militated against you as an individual, but nowhere in the file can it be seen that the agency has violated any retention of reemployment or promotion regulations.
It is regretted that we are unable to provide you with any more favorable information.
No further consideration can be given your case by t.biR office. If you have new and material information or if you believe that the decision of this office is not proper on the basis of the facts presented, you may appeal to the IJ. S. Civil Service Commission, Washing *879 ton 25, D. C. Any such further appeal must be submitted through this office within seven (7) days from the receipt of this notice. The file will be forwarded promptly by this office to the Civil Service Commission, Washington 25, D. C., for final decision. Any subsequent correspondence should be with that office.
31. By letter dated December 7,1952, plaintiff advised the regional director that he was appealing the decision of December 8 and submitted his appeal through the seventh region. On the same date plaintiff submitted an appeal to the Civil Service Commission contending among other matters that some twenty employees had been bypassed in the promotion of Mr. Ballman. The regional director then transmitted plaintiff’s entire file to the chairman of the Board of Appeals and Beview under date of December 18, 1952.
32. On April 3,1953, plaintiff’s appeal was denied and the chairman of the board wrote him as follows:
Beference is made to your request for further consideration of your right to “retreat” to the position of Assistant Adjudication Officer, GS-12, after having been reached for separation through reduction in force procedures from your position of Bating Specialist (Legal), GS-12, with the Veterans Administration Milwaukee Begional Office, effective May 31,1952, and for consideration of your reappointment priority rights to the vacancy subsequently created in the position of Assistant Adjudication Officer, GS-12, on October 1, 1952, which was filled by the promotion of Mr. B. J. Ballman.
The record clearly shows that your previous reassignment from the position of Assistant Adjudication Officer, GS-12 (P-5), to a position of Bating Specialist, GS-12 (P-5), was a lateral reassignment in grade and salary. Since no promotion was involved, no “retreat” rights would exist. Consequently, the Veterans Administration was not required under the Commission’s Betention Preference Begulations to offer you reassignment through the “retreat” provisions of the regulations to the position of Assistant Adjudication Officer, GS-12, at the time you were reached for reduction in force action in your position of Bating Specialist (Legal), GS-12, in April 1952.
The Personnel Officer of the Veterans Administration Milwaukee Begional Office has advised us that while they recognized that the position of Assistant Adjudication Officer carries certain responsibilities and duties *880 which are not found in positions on the Eating Board, they did not feel at the time reassignments were made in that office that the movement from the position of Assistant Adjudication Officer to Eating Specialist constituted an adverse action within the meaning of the Veterans’ Preference Act. We were further advised that the employees concerned did not raise any questions about the actions.
If any employee affected by a reassignment of the nature mentioned in the preceding paragraph was of the opinion that such a reassignment did constitute am adverse action within the meaning of the Veterans’ Preference Act of 1944, as amended, it was incumbent upon him to file an appeal with the appropriate office within the Commission within ten days of the effective date of such action.
In accordance with the Commission’s Eetention Preference Eegulations in effect at the time of your reduction in force Mr. Croke, whom you mention in your appeal, was properly considered as being in the PA-1 retention subgroup inasmuch as there is no indication he was promoted in grade subsequent to the effective date of the Whitten Amendment which placed a restriction on such promotions.
The fact that Mr. Croke was reassigned to a vacant position of Assistant Adjudication Officer, GS-12, on October 11,1951, following his separation from the position of Eating Specialist (Legal), GS-12, pursuant to reduction in force procedures did not in any way violate any of your rights under the Commission’s Eetention Preference Eegulations.
The record shows that you were separated through reduction in force procedures from your position of Eating Specialist (Legal), GS-12, effective May 31, 1952. In lieu of separation from the service you were offered and accepted reassignment to an Adjudicator, GS-9, position. In the meantime, on October 1,1952, a vacancy was created in the position of Assistant Adjudication Officer, GS-12. Mr. Ballman, an Adjudicator, GS-9, was administratively promoted to that position. It is your contention that this administrative action of the agency deprived you of your civil service rights.
On the basis of the facts contained in the record, you have no mandatory restoration or reappointment priority rights to the vacant position of Assistant Adjudication Officer, GS-12. Employees who accept demotion in lieu of separation by reduction in force are not eligible to have their name placed on the-reappointment reserve *881 list. Consequently, the fact the agency administratively promoted Mr. Ballman in preference to you to fill the vacancy which was created ón; October 1, 1952? did not violate any of your rights under the Commission’s Retention Preference Regulations.
On the basis of the foregoing facts, it has been determined that no proper, basis exists whereby the Commission may take favorable action on your appeal.
33. As previously noted, the questions raised by plaintiff’s cla.im have been considered by the Civil Service Commission. It is found that the decision of the Commission adverse to plaintiff was not arbitrary, capricious or procedurally defective, but that, on the contrary, it was supported by substantial evidence.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and his petition is therefore dismissed.