Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff brings this action as the son and executor of the Estate of Dr. Alvin B. Sweeney, deceased. He seeks to recover Federal income taxes which he asserts have been erroneously and illegally collected. He also seeks the cash equivalent of sick leave which decedent had to his credit on the date of his resignation as Superintendent of Gallinger Municipal Hospital, Washington, D.C.
The decedent, Dr. Sweeney, was commissioned an assistant surgeon in the United States Public Health Service on March 3,1913, from which position he was retired by reason of age on October 1,1945, in accordance with the provisions of the Public Health Service Act of 1944, 58 Stat. 682. In the early part of his last year of service, 1945, and while still on active duty, decedent learned of the possibility of obtaining employment as Superintendent of Gallinger Municipal Hospital (now known as D.C. General Hospital). After negotiating with the City Health Officer of the District of Columbia and others, he was appointed Superintendent of Gallinger Muncipal Hospital on July 6,1945.
To enable Dr. Sweeney to accept the position of Superintendent without prejudice to his retirement rights as an officer of the Public Health Service, the Congress on July 5, 1945, passed an act, 59 Stat. 411. Among other things, the act permitted the Commissioners of the District of Columbia to appoint any retired officer of the United States Public Health Service to the position of Superintendent of Gallinger Municipal Hospital and pay him a salary at the rate of $8,000 per annum and in addition to pay him at the rate of not to exceed $1,500 per annum for commutation of living quarters until such time as a new Superintendent’s residence at such hospital had been constructed and was ready for occupancy. The act further provided that he might select one or the other and that if he elected to receive the salary, with or without living quarters, he should not receive his retired pay during the period of his service as Superintendent. The act further provided that he should not be deprived of the status of such retired officer, nor at the *519 termination of bis service as Superintendent, his right to his retired pay or benefits.
There are three counts in plaintiff’s petition. As to the first count, but only as to that count, plaintiff has moved for summary judgment. The defendant moves for summary judgment on all three counts. We shall consider each count seriatim. The first count raises the issue of whether the amounts received by the taxpayer for commutation of living quarters were taxable income. It also raises the issue of whether plaintiff’s claim for those years is barred for failure to make timely claims for refund.
In his second count, the plaintiff claims the money equivalent of accrued sick leave which the decedent had accumulated as Superintendent of Gallinger Municipal Hospital. The basic issue raised by this count is whether the United States is liable to creditors of the District of Columbia.
In his third count, plaintiff seeks a refund for taxes paid on retirement pay for the years 1949-1954. Besides the substantive question of whether there is any basis in law for such refund, the third count again raises the issue of whether any refund at all can be granted because of plaintiff’s failure to make timely claim for refund.
We proceed to consider the first count. In his Federal income tax returns for the years 1945 through 1949, decedent reported his total salary and commutation of living quarters allowance from Gallinger Municipal Hospital as taxable income and paid tax thereon. Decedent wrote a letter to the Collector of Internal Revenue at Baltimore, Maryland, on January 19, 1949, requesting a ruling as to whether the $1,500 annual commutation of living quarters allowance received from Gallinger was taxable income. The Collector replied that it was fully taxable.
Dr. Sweeney resigned as Superintendent effective May 15, 1949. The plaintiff, on February 3, 1954, sought a refund of income taxes for the years 1945 to 1949, inclusive. The Chief of the Appellate Division of the Internal Revenue Service, Philadelphia Region, advised plaintiff that the refund claims would be disallowed because the sums allowed as commutation of living quarters were a part of the com *520 pensation and constituted taxable income. The chief of the division asserted as a further reason for disallowance that the various claims for refund were not timely filed and were barred by the statutory period of limitations set forth by § 322(b) (1) of the Internal Revenue Code of 1939, 53 Stat. 91. Accordingly, the claims for refund were disallowed.
With regard to the assertion that the claims for refund were not timely filed, it appears that the Government is correct. Section 322(b) (1) of the Internal Revenue Code of 1939 provides that no claim for credit or refund of tax shall be allowed or made unless filed within 3 years from the time the return was filed or within 2 years from the time the tax was paid. Plaintiff did not file his claim for refund for the years 1945-1949 until February 3,1954. The recitation of these facts clearly indicates that plaintiff filed for claims outside the period of limitations set forth in § 322(b)(1).
The plaintiff, however, says that his letter of January 19, 1949, sent by Dr. Sweeney, decedent taxpayer, to the Collector of Internal Revenue was filed within the prescribed time and constituted a claim for refund. The January 19, 1949, letter recraested a ruling on the taxability of the $1,500 per annum commutation of quarters allowance. Section 3772 of the Internal Revenue Code of 1939, 53 Stat. 465, prohibits the taxpayer from suing for a refund unless he has filed a claim for refund which complies with the provisions of the law and the regulations of the Commissioner of Internal Revenue.
We do not believe that the text of the decedent’s letter of January 19, 1949,[1] can, even with a liberal interpretation, *521 be construed as a claim for refund. It is merely a request for a ruling as to whether the commutation of quarters allowance was taxable. See Baltimore and Ohio Railroad v. United States, 260 U.S. 565 (1923); Pine Hill Crystal Spring Water Co. v. United States, 74 Ct. Cl. 729 (1932).
However, even if the period of limitations set forth in § 322(b) (1) were not directly applicable, and even if the requirements for a proper claim for refund had been complied with, we would be unable to reach a decision for the plaintiff. The sums received for commutation of quarters could not in the circumstances shown here be construed other than in the manner in which the Commissioner of Internal Eevenue has interpreted them. Section 22(a) of the Internal Eevenue Code of 1939, 53 Stat. 9, defines income as including “gains, profits and income derived from salaries, wages, or compensation for personal service * * * of whatever kind or in whatever form paid * * The Tax Court when presented with a situation analogous to that before us construed § 22(a) of the Internal Eevenue Code of 1939 as the Commissioner interpreted it here. Van Rosen v. Commissioner, 17 T.C. 834 (1951). See also Herman Martin v. Commissioner, 44 B.T.A. 185 (1941).
It should be observed that the taxpayer was free to use the cash allowance in dispute in any maimer he chose. In fact, for most of the period in question he lived in his own home in Chevy Chase, Maryland, 12 miles from the hospital.
We believe plaintiff’s petition must be dismissed as to the first count because (1) the commutation of living quarters allowance must be regarded as taxable income, and (2) *522 plaintiff’s claim for those years is barred for failure to make timely claims for refund.
As to the second count which involves a claim for the cash equivalent of sick leave, the Gallinger Hospital is an instrumentality of the District of Columbia and not of the United States. The United States Government is not liable for the obligations of the District of Columbia as a municipal corporation unless the Congress has otherwise provided. O'Toole v. United States, 106 F. Supp. 804 (1952); Bundy v. United States, 21 Ct. Cl. 429 (1886). The District of Columbia has revenues and liabilities distinct from those of the United States. In light of the f oregoing, an inquiry into the merits of the plaintiff’s claim for the money equivalent of the decedent’s accrued sick leave is unnecessary. Plaintiff’s petition on this count must be dismissed because he has not stated a cause of action against the United States.
The third and final count in plaintiff’s petition appears to be a request for a declaratory judgment as to the taxa-bility of the retirement pay received by Dr. Sweeney from May 16, 1949, until the latter’s death in April 1954. Plaintiff stated at a pretrial conference that no claims for refund of any tax attributable to such retirement benefits have been filed with the Internal Revenue Service. Plaintiff’s failure to make timely claims for refund demands that the third count of his petition be dismissed. As we said on this point with regard to plaintiff’s first count, no claim for refund can be allowed unless there has been timely claim for refund pursuant to § 322(b) (1) of the Internal Revenue Code of 1939. Moreover, plaintiff’s third count must be dismissed on the additional ground that this court has no jurisdiction to grant a declaratory judgment with regard to Federal taxes under 28 U.S.C. § 2201.
Plaintiff’s motion for summary judgment as to the first count in his petition is denied. The defendant’s motion for summary judgment on each of the three counts alleged by the plaintiff is granted. The plaintiff’s petition will be dismissed.
It is so ordered.
Dtjreee, Judge; Laramore, Judge; MaddeN, Judge; and Whitaker, Judge, concur.

 “I am pleased to enclose herewith copy of Public Law 131-79th Congress (H.R. 3257) which made it possible for the undersigned to accept the position of Superintendent of Gallinger Hospital, and at the same time protect the rights for retirement benefits upon relinquishing the position of Superintendent. Then entering on duty as Superintendent of the hospital July 5, 1945, I elected to accept the position of Superintendent instead of retirement pay while so acting as Superintendent.
“Attention is invited to that feature of the Act which in addition to salary for Superintendent, [sic] there was an allowance of $1500 per annum for commutation of living quarters until such time as the new Superintendent’s residence is constructed.
“The reason for addressing you is to request a ruling as to whether the $1500.00 per annum is properly taxable. It is the feeling that since Congress specifies $1500 per annum for commutation of quarters it should not *521 be taxable. The tax has been levied on $1500 for commutation of living quarters the same as for salary. I should like very much to have your ruling as to -whether the $1500 is properly taxable.”
The Collector’s reply, dated March 7, 1949, states:
“Your letter of January 19, 1949, was received with which you enclosed a copy of Public Law 181, 79th Congress, under which you accepted the position of Superintendent of Gallinger Hospital and at the same time protected your rights for retirement benefits as a retired officer of the united States Public Health Service.
“The Question presented has been given full consideration and in the opinion of this office the allowance of $1500 for commutation of living quarters until a new Superintendent’s residence at the hospital was constructed and ready for occupancy, represents additional compensation to you and as a civilian is fully taxable income. The expense of providing living quarters is considered a personal expense, not deductible for individual tax purposes.”