**Jules H. DRUCKER and Leland Pearson**
v.
**The UNITED STATES.**
**No. 327–69.**

United States Court of Claims.
July 14, 1971.

John I. Heise, Jr., Silver Springs, Md., attorney of record, for plaintiffs; Heise, Kyle & Jorgensen, Silver Springs, Md. and Lebovici & Safir, New York City, of counsel.

J. Lawrence Heizmann, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant; C. Michael Sheridan, Framingham, Mass., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

LARAMORE, Judge:

This case involves issues similar to those discussed in Jarett v. United States, Ct.Cl., 451 F.2d 623, decided this date. There are, of course, differences in the facts since we are here dealing with different plaintiffs. Those factual differences will be set forth in full hereafter. However, before doing so it should be made clear that this case will be handled as a companion case to *Jarett* and, therefore, many of the factual details will not be repeated in this case.

As in *Jarett*, we are here concerned with the "slotting" procedures used at the Merchant Marine Academy (hereinafter referred to as Academy) during the Summer of 1968. Here, however, we are concerned with two faculty members who are not department heads or assistant department heads. This difference is relevant only as to the fact that the new "slotting" was done by the Categorization Committee as established by the original agreement which was described in *Jarett*.

Pursuant to the agreement reached by the Maritime Administrator with the United Federation of College Teachers (UFCT) the salaries of the faculty at the Merchant Marine Academy were to be revised so as to correspond more closely with that of the Naval Academy. This agreement was reached during the month of May, 1968 and was fully effectuated by July 14, 1968. It is the decision of the committee, pursuant to the revised salary schedule, as it relates to plaintiffs herein, that forms the basis for this case. As for our decision in relation thereto, we find, as we did in *Jarett*, that the ultimate slotting decision may be within the discretion of the agency, but that the procedure used to reach that decision was not fair and equitable to the plaintiffs in this case and, therefore, we have jurisdiction to hear plaintiff's case.

Before describing in what respect we feel the procedures used were unfair, the facts of this case should be stated. Plaintiff Drucker began his teaching career at the Academy in 1946 and after a period of civilian practice as an engineer, he returned to the Academy as an Associate Professor in 1962. Plaintiff Drucker has a Master's Degree in Mechanical Engineering and is a licensed professional engineer. As for plaintiff Pearson, he holds a Master's Degree in Education and has been instructing for 19 years in the Nautical Science Department at the Academy. Both plaintiffs, in March of 1968, were recommended for promotion by their respective department heads. It is the timing of the promotions in relation to the reclassification, or slotting, that creates the problems in this case. Thus, the following chain of events, together with the specific dates on which they occur, should be noted carefully.

Following the recommendation for promotion to full professor by the department heads, the faculty Committee on Promotions and Awards forwarded the recommendations to the Academic Dean's Office. This was done in Drucker's case on April 29, 1968 and for Pearson on the same date. After consideration by the Dean's Office of both recommendations, the Dean endorsed same and forwarded his endorsement to the Superintendent of the Academy. This was done on May 24, 1968 for both plaintiffs. On receipt of the recommendations, together with the endorsement by the Dean, the Superintendent *approved* the promotion of both plaintiffs. This approval was indicated on what the parties describe as Standard Form 52, and in the case of Drucker it is dated June 10, 1968 while for Pearson the Form is dated June 6, 1968. It should be noted that the above dates of approval by the Superintendent are well in advance of the date on which the Categorization Committee submitted its report of the

slotting. However, it should also be noted that the applicable personnel procedures in the Maritime Administration require that the Superintendent of the Academy forward the approved promotions to the Personnel Office of the Department of Commerce. It is the defendant's contention that because of the formality of having the Personnel Office act on the Superintendent's approval and that since the Director of Personnel did not effectuate the promotions until August 4, 1968, the plaintiffs in this case were not entitled to be considered as professors during the time the Categorization Committee was making its findings.

As might be anticipated from the foregoing, plaintiffs feel differently. They contend that for all practical purposes, including the slotting procedure, they had been promoted when the Superintendent of the Academy approved the recommendations. They point out that if the Categorization Committee had been notified that plaintiffs were full professors the recommendation of the Committee would have been different. The difference, plaintiffs assert, is that rather than being slotted in the *upper* category of *associate* professor they may have been slotted in the *upper* category of *professor*. The salary for each plaintiff would thereby have been increased. Before describing this difference in monetary terms, it is important to note that in this case, unlike *Jarett*, the new salary schedule breakdown is important.

In *Jarett, supra*, it was not relevant that the revised salary schedule was broken down into an *upper* and a *lower* category. However, in this case it is extremely important because it is this breakdown that causes the problems. To illustrate the differences in categories, note that if an associate professor is slotted in the *lower* category the corresponding salary range is from $12,797 (grade 17) to $17,098 (grade 31). However, if that associate professor is placed in the upper category, the salary range begins at $15,869 (grade 27) and continues on up to $20,309 (grade 40). At the

professor level there is also the upper and lower category with similar floors and ceilings but in greater amounts.

The method by which a faculty member was placed in either the upper or lower category was set forth by the agreement between the Maritime Administrator and the UFCT. It provided, *inter alia*, that:

\* \* \* \* \* \*

Those faculty members fully meeting the Maritime Administration qualification requirements of March 1966 (substitution of equivalency in engineering and nautical science departments will be permitted) for their rank may be converted to a higher rate in the upper pay category for their rank not exceeding the maximum in-hiring rate for the category, or one step above their current rate— whichever is higher—when the upper pay category is determined to be merited based on such factors as demonstrated professional competence and achievement, teaching ability, scholarly activity, and potential for future development.

As for plaintiffs in this case, they were slotted as follows: Leland Pearson, step 29, *upper* ($16,483) Associate Professor; Jules H. Drucker, step 31 *upper* ($17,098) Associate Professor. This determination was submitted by the Categorization Committee on June 25, 1968 and approved by the Personnel Officer to be effective as of July 14, 1968. As can be seen from a comparison with the promotion dates, the dates of the slotting as well as the approval thereof were *after* the Supervisor of the Academy approved both promotions. Moreover, it should be noted that plaintiffs were slotted as associate professors in the *upper* category. These facts made quite a difference to plaintiffs.

The difference as it relates to each plaintiff is not that they were denied the increase in pay that corresponds to a promotion, because they were in fact given a raise. However, the difference lies in not giving them credit for the promotion at an earlier date. Actually

plaintiffs were put in the professor division, effective August 4, 1968, but, and here is the plaintiffs' real objection, they were also slotted in the *lower* category. Plaintiffs allege that had the Categorization Committee been allowed to consider them as full professors they would have been slotted in the *upper* category. This would make a difference in Drucker's case of going from a step 32, lower category, Professor (which pays $17,454), to at least a step 39, the lowest step in the *upper* category, which pays $19,952. As for plaintiff Pearson, he would go from step 31, Professor, lower category, paying $17,098, to at least a step 39, which pays $19,952. It should be noted that the difference is indicated with the position in which the plaintiffs were placed after the formal effective date of their promotions. Logically, the difference would be greater if the original slot, before the increase in salary, were used. Having thus described the problem, we are now faced with proposing a solution.

■ As in *Jarett, supra,* before delving into the niceties of a judicial resolution of the plight of these plaintiffs, we must first dispose of the jurisdictional questions. However, unlike in *Jarett, supra,* we will not go into lengthy detail. We feel that for the same reasons discussed in *Jarett,* the limitations of the Administrative Procedure Act, section 10, 5 U.S.C. § 1009 (1964) (recodified as 5 U.S.C. §§ 701–706 (Supp. IV 1965–68)) do not prevent us from considering the procedural defects in this case. Nor do we feel that the restriction concerning our reluctance to promote impedes our consideration here. We are of the opinion that this case is not one where we are substituting our judgment for that of the agency, since we will not make the decision as to where the plaintiffs are to be slotted. We are merely considering the procedures used in the process of rearranging the salary schedule at the Academy and that consideration of procedural aspects of agency action is within the realm of our expertise was aptly stated in Moore-McCormack Lines,

Inc. v. United States, 413 F.2d 568, 581, 188 Ct.Cl. 644, 665 (1969) when we stated:

> * * * Especially if the merits of the determination may be largely shielded from judicial review * * * is it essential that proper procedures precede the administrative decision. In those situations the right to fair process may be the most meaningful right possessed by the affected parties, and at the same time the sharpest goad pressing the decision-maker toward a fair and correct result.

Therefore, just as we concluded in *Jarett, supra,* we do not feel restrained from proceeding with this case on the merits.

■ As was noted earlier, the Categorization Committee considered plaintiffs as associate professors when making the recommendation for slotting. In view of the fact that plaintiffs' promotions were *approved* by the Superintendent of the Academy prior to the consideration of the Categorization Committee, we feel that this created a substantial defect in the procedure used by the said committee in considering plaintiffs. By not treating plaintiffs as full professors the committee could not determine if they merited the upper category as professors. They, plaintiffs, were therefore placed in the *lower* category subsequent to the completion of the slotting procedure.

We might also note that plaintiffs complain that they were not afforded a hearing pursuant to the applicable grievance procedures under which they filed a complaint. (See *Jarett, supra,* and Administrative Order No. 202–770, issued February 5, 1963 by the Department of Commerce and made applicable to the Merchant Marine Academy.) And that since the defendant did not abide by its own regulations, the action taken is nullified. Defendant, on the other hand, states that the decision to reject plaintiffs' grievance without a hearing was authorized by regulation.

Whether it was or was not, we do not decide. We are of the opinion that the procedural defect first noted, i. e., that the committee did not consider plaintiffs as full professors, is sufficient ground upon which to decide this case. Consequently, anything we might add in respect to the grievance procedure would be surplusage.

Finally, and in conclusion, we must re-emphasize that plaintiffs in this case were not accorded the full effect of their promotions. That the formality of having the Personnel Officer act upon the approved promotion is just that, a mere formality, and nothing more, is indicated by the defendant's own Administrator's Order, No. 181, effective July 21, 1967, which stated at section 6.08–3:

> * * * The Dean shall review the recommendations of the Committee on Promotions and Awards and shall forward same, with his own recommendation, to the Superintendent *for final consideration and decision as to selection.* * * * [Emphasis added.]

Moreover, plaintiffs' promotions were formally announced at the final faculty meeting for the academic year preceding the slotting procedures. Therefore, whether the committee was not informed, or whether they chose to disregard the promotions, makes no difference. In either event we feel that a procedural error has been committed and for that reason we deny defendant's motion for summary judgment and grant plaintiffs' motion to the extent indicated herein. Consequently, we are suspending further action in this case so that the proper officials of the Maritime Administration may reconsider the category in which the plaintiffs, as professors, are slotted. We do not decide in which slot each plaintiff should be placed because to do so would be to substitute our judgment for that of the agency. The final decision as to the proper category, based on the criteria set forth in the agreement, together with a procedure that accords each faculty member equal treatment, is within the discretion of the agency involved herein. Once the procedural defect noted above has been cured, we are confident that plaintiffs will have been afforded every consideration to which they are entitled.