Melvin **ALLISON** et al.,
v.
The **UNITED STATES.**
No. 507–69.

United States Court of Claims.
Oct. 15, 1971.

Paul J. Tagliabue, Washington, D. C., for plaintiffs. Monroe H. Freedman, Washington, D. C., attorney of record for plaintiffs. John C. Roberts and Ralph J. Temple, Washington, D. C., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This is a back pay case with jurisdiction asserted under 28 U.S.C. § 1491, which provides as follows:

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, * * *.
* * * * * *

Plaintiffs are 15 Negro wage board employees in the Grounds Maintenance and Landscaping Unit at the National Institutes of Health (NIH). They allege that they have been denied promotions because of racial discrimination and ask the court to award them back pay for promotions at the rate of one grade a

year since January, 1965. That is the time plaintiffs says that NIH officials should have acted on their complaints under the applicable regulations.

This suit is brought under Executive Order No. 11246, 30 Fed.Reg. 12319 (1965), (now E.O. 11478, 34 Fed.Reg. 12985 (1969)) and the departmental regulations thereunder; as well as the Back Pay Act of 1966, 5 U.S.C. § 5596 (Supp. V, 1965-1969). Since we have decided today in Chambers v. United States, Ct. Cl., 451 F.2d 1045 (1971), that the Executive Orders cited provide authority for awarding back pay in racial discrimination cases, we need not consider whether the Back Pay Act also provides such a remedy.

This case had its beginning in November, 1964, when some of the plaintiffs here filed administrative complaints charging racial discrimination in employment in the Grounds Maintenance and Landscaping Unit at NIH. Eventually these complaints produced an investigation by the Deputy Equal Employment Opportunity Officer for the Public Health Service. The investigative report, issued on June 21, 1967, contains the following conclusions:

A. The investigation produced statistical evidence to support the allegation that Negro employees in Grounds Maintenance are not promoted above the WB-5 level. The concentration of Negro employees at WB-2, WB-3, WB-4 and WB-5 is disproportionately high and tends to sustain the allegation.

B. The allegations that Negro employees are restricted to lower paying jobs and are denied supervisory status is sustained.

\*　　\*　　\*　　\*　　\*　　\*

D. The allegation that white employees are promoted over Negroes of comparable experience and qualification is supported.

\*　　\*　　\*　　\*　　\*　　\*

Paragraph III of the report contained the decision:

\*　　\*　　\*　　\*　　\*　　\*

B. The disproportionate concentration of Negro employees at grade levels WB-2, WB-3, WB-4 and WB-5 shall be reviewed by management and personnel officials to determine those instances where promotions are in order and may have been improperly withheld.

\*　　\*　　\*　　\*　　\*　　\*

F. It is directed that this unit shall have the assistance of appropriate management and personnel officials in the establishment of, and adherence to, an effective merit promotion system; that standards be developed which will reflect the significance of seniority, training and related factors in the promotion process.

G. The proposal by complainants for the mass promotion of Negro employees is denied as inconsistent with Executive Order 11246. Promotions which are merited will be accomplished in accordance with III B above.

Plaintiffs were not satisfied with the action contemplated by this decision and appealed further to the HEW Equal Employment Opportunity Officer, and were granted a hearing. By decision dated December 10, 1968, the Director, Equal Opportunity Staff, upheld the finding of discrimination and affirmed the remedial action directed by the prior decision. However, no action was taken on the plaintiffs' claims for back pay pending instructions from the Civil Service Commission (CSC).

The Chairman of the Civil Service Commission submitted to the Comptroller General, the question whether the CSC had the authority to order back pay awards and retroactive promotions "when the fact of discrimination is established and evidences that the denial of past advancement was improper". By decision B-165571, dated July 18, 1969, (unpublished) the Comptroller General advised:

With regard to your specific questions the decision B-158925, July 16, 1968, involved former employees who had a statutory right to be reinstated

subsequent to their military service. We held that back pay under 5 U.S.C. 5596 could be awarded upon compliance with the requirements of the statute because the refusal to reemploy the employees in violation of a statutory right was an "action" which results in the withdrawal of pay the individual would otherwise receive. We do not feel that the rule in that case may be expanded to cover the cases here in question. The employees, while having a right not to be discriminated against, did not have an absolute entitlement to promotion at a specific time. As indicated in the decision of today to the Secretary of Housing and Urban Development, we do not find any authority in law to award back pay to employees for the periods that promotions are improperly delayed as the result of discrimination or for some other unjustified or unwarranted reason. Further, administrative errors which justify a retroactively effective personnel action are clerical or administrative errors which alter the specific intent of the official responsible for the action. 46 Comp.Gen. 595, 597. We find no evidence in the materials submitted with your letter than an administrative error of that type was involved in the cases in question.

The decision of the CSC Board of Appeals and Review, based on the opinion of the Comptroller General, was "that the corrective actions requested by the appellants cannot be taken by the Board". Following denial of their claims by the BAR, plaintiffs brought suit in this court and moved for summary judgment. Defendant cross moves for that relief. Plaintiff says "an Executive agency (HEW) has expressly found that plaintiffs were entitled to promotions, that they would have had promotions but for the racial discrimination against them, and that they should receive back pay if that is available under the law".

Of course, that is not precisely what the administrative decision said. The HEW decision affirmed the finding, which has been referred to in various parts of the record (though not in the decision itself) as a "pattern of racial discrimination" existing "over a period of several years" in the section in which plaintiffs are employed. The decision of the Director, EEO Staff, recounted the demands of plaintiffs for immediate promotions and generally preferential treatment for Negro employees to compensate for past inequities and observed:

* * *. In our opinion, even this solution would not constitute complete recovery whether in terms of financial loss, employee morale, or the irreversible damage to the whole person.

This reviewer may assume arguendo that several, if not all, of the complainants were denied promotional opportunities on racial grounds. However, to effect mass promotions on basis of seniority alone without regard to merit and work qualification is unprecedented within the context of the equal opportunity provisions. Such an approach, however appealing, would appear to run a collision course with the prevailing concept and operation of the Federal Merit Promotion System * *

This indicates a great deal of sympathy for the plight of these plaintiffs and a willingness to go as far as the law allows in attempting to make up for past injustices. It is *not* a finding that "plaintiffs were entitled to promotions, that they would have had promotions but for discrimination". The decision of the BAR in analyzing the back pay request, had this to say:

The request that each Negro employee of the Section who has remained in the same grade for one year or more be promoted one, two or three grades, depending on the length of time he has served in that grade level, to have any merit, presupposes a situation in which each white employee of the Section has been promoted a grade a year, irrespective of performance or qualifications. A study of the employment history of all of the employees in the Section in February of 1968 who initially entered on duty in the Section in grades WB–2 and WB–3 reveals con-

clusively that neither white employees, nor Negro employees, have advanced a grade a year. The Board finds no merit in this request.

This case then, is not like Chambers, ante at p. 1049 where we were:

> \* \* \* confronted with a situation where defendant admits that it discriminated against [the plaintiff] because of race *and* but for that discrimination she would have been employed at a particular grade and salary on March 17, 1967. \* \* \*

All discretionary decisions had been made administratively and the only question before us was whether, in the circumstances, E.O. 11478 provided a legal basis for awarding back pay. We held that it did. That remedy is available for these plaintiffs only if they can present us with a case like that of Mrs. Chambers.

■ Defendant does not deny discrimination in gross. Yet all we know by the administrative findings is that some unspecified individuals among the plaintiffs, but possibly not all of them, would have been promoted, but for discrimination, at unspecified times, if qualified, if vacancies at higher levels, unknown to us, had existed, and if appropriated funds had been available. We take judicial notice, for instance, that shortage of funds may halt promotions for which all other signs are favorable, all employees being necessarily "frozen" in their then established grades temporarily. We suppose, also by judicial notice, that no one can be promoted unless someone determines that he is qualified for the higher grade. The executive, uninfluenced by racial discrimination, who had to consider whether to promote these plaintiffs, or any of them, might have exercised his discretion against promotion for any of these perfectly proper reasons, or might have found them no bar.

■ All these considerations call into play in full force the normal rule against the retroactive granting of discretionary promotions by courts. *See* Chambers v. United States, Ct.Cl., 451 F.2d 1045 (1971); Weinberg v. United States, 425 F.2d 1244, 192 Ct.Cl. 24 (1970); Gearinger v. United States, 412 F.2d 862, 188 Ct.Cl. 512 (1969). We cannot, therefore, allow the relief plaintiffs seek, either now on the cross motions or after any kind of trial in this court on the facts.

We noted in *Gearinger* that an administrative tribunal having cognizance might exercise powers of retroactive promotion that courts could not, 412 F.2d at 866, 188 Ct.Cl. at 518. Plaintiff's decedent there was a naval officer and the involved tribunal was the Board for Correction of Naval Records. The Comptroller General has already approved an administrative retroactive promotion of a civilian aggrieved by racial discrimination, where the found facts took the decision out of the discretionary area. Comp.Gen. B–165571, February 19, 1971, 50 Comp.Gen. ——.

We think that the administrative refusal of the requested remedy herein, *i. e.*, mass promotions, is shown by documents to have been due to a belief that such promotions could not legally have been granted even in a case of the *Chambers* type, with discretionary factors removed. The GAO, the BAR, and HEW, all shared this erroneous idea. As a result, there was no consideration of making findings showing, in light of all the factors, when, if at all, each individual plaintiff would have been promoted, but for racial discrimination. Nevertheless, the findings actually made are persuasive that someone having a name and grade would have received a promotion to a certain grade at a time certain, all factors having been considered. In future, in light of our *Chambers* decision, agencies will not limit themselves to findings of broad en masse discrimination, but will if they can be specific enough to allow of judicial relief, at any rate so long as they deny themselves the power to grant it administratively. Because of the error of law, the findings in this case are not to be construed as holding it impossible to ascertain *ex post facto* whether and when plaintiffs would have been promoted, discrimination apart.

Defendant would have us suspend this case for further administrative findings if we should hold—as we do—that "plaintiffs are entitled to promotion consideration free of any vestige of discrimination."

■ We are not impressed with defendant's argument that some of the plaintiffs here were not parties to the administrative proceedings and therefore had not exhausted their administrative remedies. Since the administrative holding was that no remedy was available as a matter of law, "we think they were not required to go through obviously useless motions in order to preserve their rights." Walsh v. United States, 151 Ct.Cl. 507, cert. denied, sub. nom. Alexander v. United States, 365 U.S. 880, 81 S.Ct. 1029, 6 L.Ed.2d 191 (1960).

Accordingly, we deny without prejudice plaintiffs' motion and defendant's cross motion for summary judgment and suspend proceedings here to allow plaintiffs to apply for administrative findings which shall show, person by person, whether such person would have been promoted, when, and to what grade or grades, in light of such person's qualifications, the qualifications of competitors, the existence of vacancies, the availability of funds, and all other factors that would have properly influenced the exercise of discretion in the making of an actual promotion at the time a promotion was due. *Cf.* Drucker v. United States, 451 F.2d 619, 195 Ct.Cl. 335 (1971).

SKELTON, Judge (dissenting):

I respectfully dissent for all the reasons set forth in my dissenting opinion in Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. —— (1971), this day decided by this court. My reasons for dissenting in that case are fully applicable to this case, and they will be summarized below.

In this case, the plaintiffs relied mainly upon the Back Pay Act of 1966 (5 U.S. C. § 5596 (1964)), for recovery and secondarily upon Executive Orders 11246,

30 Fed.Reg. 12319 (1965), now E.O. 11478, 34 Fed.Reg. 12985 (1969) and departmental regulations. The executive orders and regulations are the same as those that were involved in the *Chambers* case.

The majority opinion did not deal with the Back Pay Act, but relied exclusively on the executive orders and the regulations. Therefore, I need not consider the Back Pay Act.

This court does not have jurisdiction of this case for many reasons. The plaintiffs have not alleged a cause of action on which relief can be granted. They are asserting claims for salaries of jobs, but their petition does not allege that they were ever appointed to those jobs, nor that they performed services therein. Without these essential allegations, the petition does not state a cause of action. We have so held in the cases of Price v. United States, 65 Ct.Cl. 91 (1928), cert. denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001; Barea v. United States, 115 Ct.Cl. 44 (1949); and Hyman v. United States, 157 F.Supp. 164, 138 Ct.Cl. 836 (1957).

The failure of the department to promote the plaintiffs, whatever the cause, did not give them a cause of action against the United States, because they had no constitutional, vested, or inherent right to the jobs they are claiming. This is unquestionably the law. *See* McAuliffe v. New Bedford, 155 Mass. 216, 29 N.E. 517 (1892); Jenson v. Olson, 353 F.2d 825 (8th Cir. 1965); and Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), aff'd, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951).

Article 2, Section 2 of the Constitution provides that officers of the United States shall be appointed by the President or the heads of the departments, as Congress may direct. There is no other way a person can obtain a government job. *See* United States v. Smith, 124 U. S. 525, 8 S.Ct. 595, 31 L.Ed. 534 (1888); United States v. Mouat, 124 U.S. 303, 8 S.Ct. 505, 31 L.Ed. 463 (1888); and Thomason v. United States, 85 F.Supp. 742 (N.D.Cal.1948), aff'd, 184 F.2d 105

(9th Cir. 1950). Government employment is not a contract, is not property and the due process clause of the Constitution does not apply. Bailey v. Richardson, *supra*; Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890); Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900); and Jenson v. Olson, *supra*. Since the plaintiffs were never appointed to these jobs, they had no vested or property rights in them. Consequently, when they were not promoted, they were not denied anything that they had a right to.

It is fundamental that the salary of a government job is incident to and attaches to the job. In other words, it is a part of the job and goes with it. Because of this principle, the salary is payable only to the person appointed to the job, and a government employee is entitled only to the salary of the position to which he has been appointed. See Borak v. United States, 78 F.Supp. 123, 110 Ct.Cl. 236 (1948), cert. denied, 335 U.S. 821, 69 S.Ct. 43, 93 L.Ed. 375; Price v. United States, 80 F.Supp. 542, 112 Ct.Cl. 198 (1948); Ganse v. United States, 376 F.2d 900, 180 Ct.Cl. 183 (1967); United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877); Amundson v. United States, 120 F.Supp. 201, 128 Ct.Cl. 80 (1954); and Dvorkin v. United States, 101 Ct.Cl. 296, cert. denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586 (1944). A corollary principle is that where an employee has received the salary of the office to which he was appointed, he has received all that he was entitled to. Price v. United States, *supra*; Ganse v. United States, *supra*. It follows from these authorities that the only way the plaintiffs could get the salaries of the jobs they are claiming was to be appointed to these positions, which did not happen. Also, when they received the salaries of the jobs to which they had actually been appointed, they had received all they were entitled to. These principles were applied in the above cited cases and in Donnelly v. United States, 134 F.Supp. 635, 133 Ct.Cl. 120 (1955); and Tierney v. United States,

168 Ct.Cl. 77 (1964), which were "promotion" cases, Amundson v. United States, *supra*, was also a promotion case.

It is clear that since the plaintiffs have not alleged nor shown that they have met the requirements set forth in the above authorities, they have not alleged a cause of action and this court does not have jurisdiction of their case.

Although the majority opinion has not appointed the plaintiffs to the jobs they are claiming, it indicates, by suspending proceedings to allow the plaintiffs to apply to the agencies for designated findings, that if the findings are favorable to the plaintiffs, the court will proceed to appoint (promote) them to the jobs and award them salaries and make the appointments retroactive. This would not only be beyond the power of this court, but would also be an unwarranted and unauthorized interference with a discretionary function of an agency. In the first place, the decision of the Director, Equal Opportunity Staff of HEW shows that promotions that are merited will be made by the agency and that steps to that end are being taken. His decision was as follows:

B. The disproportionate concentration of Negro employees at grade levels WB–2, WB–3, WB–4 and WB–5 shall be reviewed by management and personnel officials to determine those instances where promotions are in order and may have been improperly withheld.

\*  \*  \*  \*  \*  \*

F. It is directed that this unit shall have the assistance of appropriate management and personnel officials in the establishment of, and adherence to, an effective merit promotion system; that standards be developed which will reflect the significance of seniority, training and related factors in the promotion process.

G. The proposal by complainants for the mass promotion of Negro employees is denied as inconsistent with Executive Order 11246. Promotions

which are merited will be accomplished in accordance with III B above.

The majority decision not only interferes with this orderly and discretionary function of the agency, but actually proposes by implication and inference to substitute the judgment of the court for that of the agency. This would be accomplished by making the appointments retroactive, as that is the only way the plaintiffs would have any claim to the salaries, which the majority erroneously refers to as "back pay." Unless the plaintiffs are appointed to the jobs retroactively, they cannot be paid the salaries of the jobs for the retroactive period. Apparently, the majority intends to so appoint them if the agency findings are favorable to the plaintiffs. This would be error.

As pointed out above, Article 2, Section 2 of the Constitution places the appointing power in the heads of the departments, if directed by Congress. Such power has been given to the head of the department here. This court has no authority to take over that function. The Supreme Court and all other courts have always held that the appointment of government employees is an executive agency function that involves discretion and it will not be interfered with by the courts. Ex parte Hennen, 38 U.S. (13 Pet.) 230, 10 L.Ed. 138 (1839); Decatur v. Paulding, 39 U.S. (14 Pet.) 497, 10 L.Ed. 559 (1840); United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877); Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); Donnelly v. United States, *supra*; Tierney v. United States, *supra*; and Amundson v. United States, *supra*.

During the more than 100 years this court has been in existence we have never promoted any government employee. Our jurisdiction has always been and still is limited to the granting of money judgments. United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). This principle was expressed very well by Judge Laramore in speaking for the court in Umbeck v. United States, 149 Ct.Cl. 418 (1960), when he said:

\* \* \* Furthermore, it is the function of the agency rather than the court to make promotions, and to allow plaintiff to recover on this theory would be in effect granting a promotion to plaintiff. It is well settled that this court's jurisdiction extends only to the granting of a monetary judgment. United States v. Jones, 131 U. S. 1 [9 S.Ct. 669, 33 L.Ed. 90]; United States v. Alire, 6 Wall. 573 [18 L.Ed. 947]; Hart v. United States, 91 Ct. Cl. 308. [*Id*. at 429.]

Again in Bortin v. United States, 138 F.Supp. 251, 133 Ct.Cl. 856 (1956), we said:

Nor did plaintiff have any right to complain because, later on, an adjudicator other than he was promoted to assistant adjudication officer. It is still true, fortunately, that "promotion is the prerogative of an agency so long as the employee promoted meets the requirements for the position to which promoted." It would be quite detrimental to the public service if an agency head had no discretion in selecting men to do important jobs. He is already circumscribed more than a little in his control over his subordinates. [*Id*. 138 F.Supp. at 253, 133 Ct.Cl. at 860.]

The appointment of these employees retroactively for a period of five years would create innumerable problems. How many times would each man be promoted? Congress creates the jobs and appropriates the salaries. There are a limited number of jobs created. The jobs the plaintiffs are claiming have long since been filled by other employees. What would happen to them? If they are removed to make places for plaintiffs, they would have claims under the Back Pay Act. Also, they have already received the salaries for five years that plaintiffs are now claiming. Then there are the problems connected with seniority and special benefits. The court would find itself lost in a quagmire of problems that could not be solved.

The appointment of the plaintiffs to these jobs retroactively by the court

would be the exercise of equitable powers this court does not possess. United States v. King, supra. We do not even have the power to restore an illegally discharged employee to his job. Casman v. United States, 135 Ct.Cl. 647 (1956).

The majority opinion in its present posture is actually a declaratory judgment. This is so because the plaintiffs' claims are not "limited to actual presently due damages from the United States," which the Supreme Court said in United States v. King, *supra*, was necessary in order to give this court jurisdiction. Otherwise, a declaration of the right of a claimant is a declaratory judgment. Here no court having appropriate powers has held that the plaintiffs are entitled to any money, nor has declared their rights to any amount of damages. We have no jurisdiction to entertain their claims or to declare their rights.

We have no jurisdiction of plaintiffs' suit because the United States is immune from this suit in this court unless such immunity has been waived by a specific Act of Congress that expressly consents for the government to be sued on this claim here, and no such waiver has been given by Congress in this case. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190 (1924); and United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The only statute involved in this case is 5 U.S.C. § 7151, Supp. V. (1965–1969). There is not a word in this statute that waives the sovereign immunity of the government from suit nor that creates a cause of action in favor of the plaintiffs against the United States. The statute merely announces a policy for the guidance of the Federal agencies. It leaves the individual to his administrative remedies, and Congress has the power to do this. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). Administrative relief has been

given to the plaintiffs herein that they have a decision of the agency that where promotions have not been made as they should have been because of racial discrimination, such promotions will now be made. That is all they are entitled to under the statute, because it does not command or suggest the payment of money or compensation to anyone if the policy which it establishes is violated. Congress never intended the payment of damages or compensation for the violation of the policy. If it had so intended, it would have provided for it.

Of course, sovereign immunity from suit cannot be waived by implication in the construction or interpretation of a statute that is ambiguous. United States v. King, *supra*; General Mut. Ins. Co. v. United States, 119 F.Supp. 352 (N.D.N.Y.1953); Leyerly v. United States, 162 F.2d 79 (10th Cir. 1947); and North Dakota-Montana Wheat Growers' Ass'n v. United States, 66 F.2d 573 (8th Cir. 1933).

The executive orders and the regulations likewise do not waive the sovereign immunity of the government from suit in the event of the violation of the non-discrimination policy they announce. Neither do they create a cause of action in favor of anyone against the government if the policy is violated. Even if they did attempt to waive such sovereign immunity, such action would be wholly void because no officer of the government can give such a waiver or consent for the United States to be sued. United States v. Shaw, *supra*; United States v. U. S. Fidelity & Guaranty Co., *supra*; Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633 (1938); Finn v. United States, 123 U.S. 227, 88 S.Ct. 82, 31 L.Ed. 128 (1887); and Jones v. Tower Production Co., 120 F.2d 779 (10th Cir. 1941). Only Congress has the power to waive sovereign immunity of the government from suit. These regulations and executive orders were for the guidance of the Federal agencies and to provide administrative remedies for individuals. The plaintiffs have received and

are receiving administrative relief under them.

The Tucker Act (28 U.S.C. § 1491 (1964)), does not waive sovereign immunity nor give this court jurisdiction in this kind of case. *See* Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965) cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966); Congress of Racial Equality v. Commissioner, Social Sec. Admin., 270 F.Supp. 537 (D.Md. 1967); and Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). These cases hold that the judiciary has been given no role in the enforcement of executive orders. The *Gnotta* opinion was written by Judge Blackmun, now Justice Blackmun of the Supreme Court. It is very much in point here because it involved the identical executive orders and regulations that we have in this case and was a promotion case. The court dismissed the cases for lack of jurisdiction and because of sovereign immunity. The court there said that the executive orders and the regulations did not purport to confer any right on an employee to sue the United States for damages in the event of their violation, *"[E]ven if it should be established that plaintiff's failure to have been promoted * * * was in fact due to discrimination in violation of the Executive Orders pleaded."* [Emphasis supplied.] [*Id.* 415 F.2d at 1278.] No more specific and direct authority on the question before us could possibly be found. It is squarely against the plaintiffs and should dispose of the case in favor of the government.

The "back pay" cases such as Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Glidden v. United States, 185 Ct.Cl. 515 (1968); and Fletcher v. United States, 392 F.2d 266, 183 Ct.Cl. 1 (1968); and others are not authority for the maintenance of this case in this court. Those cases all involve illegally discharged employees who were given back pay because they were considered as not having been discharged

at all. That is not the situation here. In this regard, see United States v. Perkins, 116 U.S. 483, 6 S.Ct. 449, 29 L.Ed. 700 (1886); and United States v. Wickersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906).

The Tucker Act is not blanket authority for every suit based on a statute or regulation to be filed in this court. We do not have jurisdiction of suits for injunction, mandamus, declaratory judgments or restoration to office of illegally discharged employees even if such suits are based on the violation of a statute or regulation. This is because Congress has not waived the sovereign immunity of the government to be sued in this court in cases of this kind. This is true notwithstanding the provisions of the Tucker Act.

In Eastport Steamship Corp. v. United States, 372 F.2d 1002, 178 Ct.Cl. 599 (1967), we held that not every claim involving the Constitution, a statute or a regulation is cognizable here. We said there that the particular provision of *the law relied upon must grant the claimant a right to be paid a certain sum of money.* When tested by this rule, the Tucker Act does not give us jurisdiction of the plaintiffs' case here. This is in line with the decision of the Supreme Court in United States v. King, *supra,* to the effect that this court does not have jurisdiction of a claim that is not "limited to actual presently due damages from the United States."

Finally, we do not have jurisdiction of this case because it sounds in tort. The plaintiffs' claims are based on the alleged acts or omissions of government employees in the execution of a statute and regulation, and the failure of such employees to perform the discretionary function of promoting them because of racial discrimination. This is exactly the kind of tort action described in 28 U.S.C. § 2680(a), known as the Tort Claims Act. The statute provides that the government cannot be sued in this kind of a case. Of course, this court has no tort jurisdiction. This kind of tort action cannot be brought even in a dis-

trict court which has tort jurisdiction. We held in Eastport Steamship Corp. v. United States, *supra*, that the refusal of the Maritime Commission to issue a permit for the plaintiff to sell ships, and which caused damages to be suffered, sounded in tort under Section 2680(a) and a suit for damages based thereon could not be maintained in this court. That was very similar to the situation here. The Plaintiffs' claim fits squarely within the terms of the statute and is, therefore, a non-suable tort claim by statutory definition. *See* Bulloch v. United States, 133 F.Supp. 885 (D.Utah 1955); 19 A.L.R.2d 845; United States v. Morrell, 331 F.2d 498 (10th Cir. 1964); and Morton v. United States, 97 U.S.App.D.C. 84, 228 F.2d 431 (1955).[1]

After oral argument in this case, counsel for the plaintiffs referred us to the recent decision of the United States District Court for the District of Columbia in the case of Watkins v. Washington, Civil Action No. 2977–69, decided July 8, 1971, in support of the plaintiffs' case here. A reading of that case shows that it does not help the plaintiffs in the case before us. That case began as a racial discrimination complaint against the City of Washington, D. C. The Mayor dismissed the complaint after concluding that it did not call for any action on his part. Suit was then filed asking the court to set aside the Mayor's action and "order appropriate relief." It cannot be determined from reading the opinion whether the plaintiffs were suing for money or salaries. The suit was a class action wherein the plaintiffs were complaining that they as non-white employees of a city department had not been promoted properly for several years. The court on his own motion (as far as the opinion shows) awarded 14 of the plaintiffs the sum of $32,400, although he did not promote any of them. That case is not in point here because the City of Washington is a municipality like any other city and is not a part of the Government of the United States. *See* John McShain, Inc. v. United States, 375 F.2d 829, 179 Ct.Cl. 632 (1967); Sweeney v. United States, 285 F.2d 444, 447, 152 Ct.Cl. 516, 522 (1961); and O'Toole v. United States, 106 F.Supp. 804, 806–807 (D.Del.1952), rev'd on other grounds, 206 F.2d 912 (3d Cir. 1953). Different rules apply to suits against municipalities than those governing suits against the United States. If the *Watkins* case had been a suit against the United States for salaries, the district court would not have had jurisdiction because of Title 28 U.S.C. § 1346. Under such circumstances, if it was a suit sounding in tort, the district court would not have had jurisdiction because of Title 28 U.S.C. § 2680(a) quoted above. Also, the court would have lacked jurisdiction because of no waiver of sovereign immunity or consent for the government to be sued on that kind of a case in the district court. Besides the foregoing, the district court has broad general equity powers that the Court of Claims does not have. That case does not support the plaintiffs' claim in our case.

I come now to consider the propriety of the action taken by the majority. They have suspended proceedings here to allow the agency to make certain findings. This is equivalent to remanding the case to the agency for said purpose. This should not be done. It is an open invitation for some one in the agency to speculate and guess who among the plaintiffs would have been appointed or promoted to what grade at any given time during the last five years "in light of

---

1. Title 28 U.S.C. § 2680(a) is as follows:

§ 2680 Exceptions.

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execu-

tion of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

such person's qualifications, the qualifications of competitors, the existence of vacancies, the availability of funds," etc. For all we know, the officers of the agency who would have made these determinations five years ago, in the exercise of discretion, and based on their knowledge of the ability and attitudes of the plaintiffs, may not even be employed by the agency at the present time. Whatever happens when the agency again considers this problem on the "remand" from the court, will present nothing but difficulties for us. Suppose the agency fails or refuses to make the findings suggested by the court. What do we do then? We have no power to force the agency to make such findings. I assume that in such case the majority would undertake to make them. This would be an insurmountable task. How could the court exercise the discretionary functions of passing on and judging each of the plaintiffs from the standpoint of his appearance, education, attitude, ability, qualifications, ability to cooperate with co-workers, ability to supervise others, and other attributes, to say nothing of existence of jobs and availability of funds during the five year period? If the court makes such findings despite these obstacles, or if they are made by the agency, what does the court do then? We have no equity power to appoint anyone to a government job. We have no power to award a salary to anyone who has not been appointed to a government job by an authorized agency. We will be confronted with a legal impasse. I can only conclude that the majority opinion is getting us embroiled in a sticky departmental problem that we have no business getting involved in. The agency has undertaken to solve the problem. Why not let it finish it without our interference? Should we follow the course undertaken by the majority, we will become the "promotion watchdog" of the hundreds of thousands of employees of the many departments of the government. We will be called upon to approve and supervise the promotion of every clerk, typist, secretary and every other employee from janitor to the head of each department. I cannot envisage this prestigious court occupying a role of this kind.

Furthermore, the majority decision has the effect of enlarging the jurisdiction of this court without Congressional authority, which cannot be done legally. The decision will open the floodgates to a torrent of litigation from the thousands of government employees who are each year denied promotion for one reason or another. The majority opinion will give them a basis to sue the government because of alleged discrimination due to race, creed, color, religion, country or origin, age, sex, or what have you. We should refrain from venturing into this nightmare and bramble of suits for promotion. The proper course to follow would be to follow the law and dismiss the plaintiffs' case for lack of jurisdiction.

I would deny plaintiffs' motion for summary judgment and grant that of the government and dismiss the plaintiffs' case for lack of jurisdiction.

COLLINS, J., joins in the foregoing dissenting opinion.