Karen A. HARRISON, Plaintiff,

v.

Earl L. BUTZ et al., Defendants.

Civ. A. No. 2525–72.

United States District Court,
District of Columbia.

May 24, 1973.

J. Francis Pohlhaus, Washington Bureau, NAACP, Washington, D. C., for plaintiff.

Harold H. Titus, U. S. Atty., Arnold T. Aikens and Leonard W. Belter, Asst. U. S. Attys., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

This is a suit brought by a Negro female former employee of the United States Department of Agriculture in which she claims that she was unlawfully discriminated against on account of her race and sex.[1] She has sued the Secretary of Agriculture, the Civil Service Commission and the United States. She seeks declaratory relief and an order remanding her complaint of discrimination to the Civil Service Commission with instructions to direct the Department of Agriculture to grant her a hearing. The case is before the Court on cross-motions for summary judgment.

The following facts are undisputed:

On and before September 3, 1971, plaintiff, a black citizen of the United States was employed by the Department of Agriculture as a clerk-typist, GS–3. She aspired to a data processing position. She was informed that her performance rating did not qualify her to be placed on the register for that position.

On September 3, 1971, plaintiff filed a complaint of racial discrimination under Executive Order No. 11478, claiming that two supervisors had discriminated against her because of her race by deliberately giving her a performance rating low enough to prevent her from being considered "highly qualified" under the Merit Promotion Program. The rating was given to her in June, 1971.

On December 16, 1971, plaintiff was notified by her employer that she would be terminated effective January 8, 1972, for failure to qualify during her probationary period because of unsatisfactory conduct, attitude, uncooperativeness and refusal to accept an assignment on November 30, 1971. In the notice plaintiff was advised that she had the right to appeal the decision to terminate her to the U. S. Civil Service Commission, within fifteen days after the effective date of termination, if she claimed that she was terminated because of her race, color, religion, sex or national origin and also if she alleged that the action was based on political reasons or marital status or resulted from improper discrimination because of physical handicap.

Plaintiff has never appealed the action terminating her employment.

On March 30, 1972, plaintiff was advised by the agency that the evidence did not support her charge of discrimination and that it was the proposed decision of the agency that she was not discriminated against with respect to her ratings. She was advised of her right to request a hearing.

Upon plaintiff's request the agency asked the Appeals Examining Officer, U. S. Civil Service Commission, to as-

---

1. Plaintiff's administrative complaint was captioned "Complaint of Racial Discrimination". However, in the body of the complaint on pages 6 and 7 she complained also of acts of sex discrimination.

sign an Appeals Examiner to hear her complaint of discrimination.

After reviewing the file, that Office, by letter dated June 20, 1972, notified Jerome Shuman, the Director, Office of Equal Opportunity, the Agriculture Department, that although the complaint file indicated that plaintiff had been terminated, her complaint involved previous performance appraisals rather than the termination action. Accordingly, the Appeals Examining Office returned the complaint file to the agency for processing in accordance with Section 713.215 of the Civil Service Regulations.

The regulation (5 CFR 713.215) referred to by the Appeals Examining Office provides:

"Rejection or cancellation of complaint. When the head of the agency, or his designee, decides to reject a complaint because it was not timely filed or because it is not within the purview of section 713.215 or to cancel a complaint because of a failure of the complainant to prosecute the complaint or *because of a separation of the complainant which is not related to his complaint,* [emphasis supplied] he shall transmit the decision by letter to the complainant and his representative. The decision letter shall inform the complainant of his right to appeal the decision of the agency to the Commission and of the time limit within which the appeal may be submitted."

By letter dated July 3, 1972 to plaintiff, Mr. Shuman informed plaintiff that he had reviewed the entire file and stated his findings as follows:

"1. The termination notice, dated December 16, 1971, shows that you were terminated during your probationary period because you have not demonstrated a cooperative attitude and willingness to accept normal supervisory direction expected of employees of the Agency. Your refusal to accept an assignment on November 30,

1971, is cited as an example. Appropriate appeal rights are contained in the notice.

"2. The termination of your employment became effective January 8, 1972, and is unrelated to the matters which you allege were discriminatory against you based upon your race.

"3. The relief you seek is moot because you are no longer employed. (FPM Supplement 296–31, Book V, Table 8.)

"4. Even if your allegations of discrimination were found sustained, such a decision would not affect your status with this Department."

and decided:

"In view of the above findings and in accordance with Part 713, Section 713.215 and Chapter 713, Appendix B, Section B–5, Federal and Department of Agriculture Personnel Manuals, it is my decision that your complaint of discrimination be cancelled."

Upon receipt of Schuman's letter plaintiff appealed that decision to the Board of Appeals and Review of the Civil Service Commission. By letter to plaintiff dated November 20, 1972 the Board of Review stated:

"On the basis of its review of the entire record, the Board finds that your complaint, filed in September, 1971, was based upon performance ratings given to you on an earlier date, and further that the action taken to terminate your employment by notice dated December 16, 1971, to be effective January 8, 1972, was based upon a determination that your conduct, attitude and cooperativeness were not satisfactory. The notice cited an instance of non-cooperation which reportedly occurred on November 30, 1971. Accordingly, the Board agrees that your separation from employment was not related to your complaint and therefore, that the cancellation of your complaint was accomplished in

accordance with the regulations mentioned above. (Civil Service Reg. 713.215)."

The above decision of the Board was final and plaintiff was so informed.

The Equal Employment Opportunity Act of 1972, Public Law 92–261 became effective March 24, 1972, and makes applicable to Federal governmental agencies the same restrictions provided for private employers.

Plaintiff claims that she is entitled to a hearing on her complaint of discrimination notwithstanding her separation from the service and that the 5th Amendment to the Constitution of the United States and the statutes, particularly the Civil Rights Act of 1964, Public Law 88–352, 42 U.S.C. 2000e et seq., as amended by the Equal Employment Opportunity Act of 1972, Public Law 92–261, guarantee her a hearing and any Federal or administrative regulation denying her such a hearing is illegal and void.

The defendants contend (1) that plaintiff's complaint was properly cancelled under 5 CFR 713.215, (2) that the Equal Employment Opportunity Act of 1972 is not retroactive and therefore is inapplicable to this case, and (3) plaintiff has no independent right to a hearing. This Court does not agree.

■ Although the Federal Courts are divided on the issue of the retroactivity of the Equal Employment Opportunity Act of 1972,[2] on May 1, 1973, Judge John Lewis Smith, Jr., of this Court, in a case[3] remarkably similar to the instant case, held the Act to be retroactive and remanded the case to the Department of Justice for full administrative proceedings. This Court agrees with the holding of Judge Smith. As he points out, the Federal Government has never had a license to discriminate on account of race. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884

(1954). This proscription against racial discrimination and the existence of a judicial remedy where such discrimination is found to be present antedate Public Law 92–261 and exist independently of that statute.

In Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971) and Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), the Court held that persons denied employment or promotion by federal agencies because of discrimination are entitled to recover back pay.

In *Chambers*, the Court granted an applicant for employment back pay to the time the discrimination had blocked her employment until the time she was actually hired.

In *Allison*, the Court suspended its proceedings pending further administrative consideration of the complaint. In that case, an administrative finding had been made, under the procedures issued pursuant to the Executive Order prohibiting discrimination in federal employment, that some, but not necessarily all, of a group of complainants had been denied promotional opportunity because of race. The Civil Service Commission had refused to grant back pay on the ground it lacked authority to do so. The Court found that it had such authority and suspended its proceedings for further administrative action on a case-by-case basis.

■ The Equal Employment Opportunity Act of 1972, is remedial and, in accordance with established legal principles, applies to cases pending on its effective date. Plaintiff's complaint of racial discrimination was pending within the agency on March 24, 1972. The rule of law appropriate to the case is well expressed in Larkin v. Saffarans, 15 F. 147 (Cir.Ct., Tenn., 1883). In that case the plaintiff filed an action in ejectment based on title from a certificate of sale under an act of Congress.

2. Freeman v. Defense Construction Supply Center, C.A. 72–241 (S.D.Ohio, filed Oct. 14, 1972); Johnson v. Froehlke, C.A. 72–677H (D.Md., filed Jan. 4, 1973).

3. Walker v. Kleindienst, 357 F.Supp. 749 (D.D.C.1973).

While the case was pending, Congress passed a statute conferring jurisdiction on federal courts to hear this type of action. Holding that plaintiff's case would have been dismissed if defendant had filed a motion to dismiss prior to the passage of the law, the court ruled it had jurisdiction once the law became effective. It stated:

"This is only in accordance with the general rule that all remedial legislation shall be liberally construed, and particularly should this be so when new remedies are given, and with respect to bestowal of jurisdiction on the courts." p. 150.

. . . . . .

"[F]or I think it will be found generally that all such questions as this are to be determined as the law exists at the time they are decided, and not at the time the action was instituted." p. 151.

In Beatty v. United States, 191 F.2d 317 (C.A. 8, 1951) the United States sued the defendant landlord under the Housing and Rent Act for rent overcharges and statutory penalties. At the time the overcharges occurred, the tenant had the right to sue. Subsequently the statute was amended to permit the United States to sue if the tenant did not.

The court, holding that the statute was remedial, ruled that it covered overcharges that had occurred prior to the amendment and that the United States could sue under the amendment.

The vitality of this principle of law is demonstrated by the decision in Thorpe v. Housing Authority, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). There a tenant resisted eviction by a public housing authority on grounds that the eviction violated her 1st Amendment rights. She had been served a notice of eviction the day after being elected president of a tenants' organization, without being given any reason for the eviction. While the case was pending in the Supreme Court, the Department of HUD adopted a regulation requiring housing authorities to give reasons when serving eviction notices. The Supreme Court held this regulation applicable to the case before it, stating:

"The general rule is, however, that an appellate court must apply the law in effect at the time it renders a decision." p. 281, 89 S.Ct. p. 526.

This the Court held to be so whether "the change was constitutional, statutory, or judicial." p. 282, 89 S.Ct. p. 526.

As noted above the substantive right that the Equal Opportunity Act of 1972 protects, namely, the right not to be subjected to racial discrimination by the Federal government, predates the legislation, and is based on the due process clause of the 5th Amendment, as interpreted by the Supreme Court. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The Equal Employment Opportunity Act of 1972 provided additional "appropriate remedies" to those in existence, including administrative remedies under Executive Order # 11478, and clearly authorized judicial remedies such as and in addition to those granted in Chambers v. United States, *supra*, and Allison v. United States, *supra*. See also 5 CFR 713–271b; Hutchings v. United States Industries, 428 F.2d 303 (5 Cir. 1970).

Having considered the undisputed facts of this case, the nature and purpose of Public Law 92–261, the remedial nature thereof, and the applicable law, this Court has concluded that there is no genuine issue of a material fact and that plaintiff is entitled as a matter of law to a summary judgment declaring her entitlement to a hearing and remanding this case to the Civil Service Commission with instructions to direct the Secretary of Agriculture to grant her a hearing.